**John P. ALVERNAZ, Plaintiff,**

v.

**J.M. RATELLE, Warden of California State Prison at Donovan, Defendant.**

**Civ. No. 92–1256–R.**

United States District Court, S.D. California.

Sept. 9, 1993.

Charles M. Sevilla, Cleary & Sevilla, San Diego, CA, for petitioner.

John T. Swan, Deputy Atty. Gen., San Diego, CA, for respondent.

## AMENDED ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS[1]

RHOADES, District Judge.

Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. Section 2254 alleging ineffective assistance of counsel at a pre-trial stage of his state court criminal proceeding.

For the reasons stated herein, the petition for writ of habeas corpus is GRANTED.

### I.  Background

The facts of the underlying case are laid out in the California Supreme Court's opinion and will not be restated in this Order.  *See In Re Alvernaz*, 2 Cal.4th 924, 929–33, 8 Cal.Rptr.2d 713, 830 P.2d 747 (hereafter "Supreme Court Opinion").

Plaintiff alleges that his attorney, Mr. William Milloy, understated the possible sentence consequences of proceeding to trial, and thereby was constitutionally ineffective in advising Petitioner regarding a proposed plea offer from the state.  Petitioner received a trial and was found guilty of the underlying offenses.  If he had been aware of the true consequences, Petitioner argues, he would have accepted the plea offer and not proceeded to trial.

Petitioner brought a state habeas petition in the Superior Court, in the District Court of Appeals, and in the California Supreme Court.  All three courts denied Petitioner's petition with at least one judge dissenting or expressing reservations at each level of the state habeas proceeding.  After the California Supreme Court denied Petitioner's state habeas petition, Petitioner filed the instant action.

### II.  Evidentiary Hearing Conducted

In his Petition, Petitioner requested an evidentiary hearing.  In an Order filed May 26, 1993, this Court made the following conclusions of law:

1) Petitioner's attorney's performance was, under all the circumstances, unreasonable under prevailing professional norms because of counsel's failure to advise Petitioner of the correct consequences of going to trial.

2) Petitioner did not receive an evidentiary hearing on the issue of whether or not the trial court would have accepted the plea.  Petitioner is entitled to an evidentiary hearing [on] this issue.

3) Petitioner did not receive an evidentiary hearing on the issue of whether or not he would have accepted the plea.  Petitioner is entitled to an evidentiary hearing in this Court.

Order of May 26, 1993 at 2.

Without deciding the constitutionality of the California Supreme Court's holding, this Court applied the federal Habeas Corpus standards to the case and determined that an evidentiary hearing was mandatory.  Order of May 26, 1993, at 7–19 (citing *Keeney v. Tamayo–Reyes*, —— U.S. ——, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992); *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963)).

In granting the hearing, this Court agreed with Justice Mosk's dissenting opinion in *Alvernaz* that Petitioner was entitled to a hearing:

---

1.  Today's Amended Order is being reissued for purposes of publication and shall be entered *nunc pro tunc*.  This Court's Order denying Respondent's Motion to Amend the Judgment has been incorporated into this Amended Order.  The 30 day stay for granting the writ shall not be extended by virtue of today's Amended Order.

If this petitioner's allegations do not entitle him to at least such a hearing, it is difficult to imagine what allegations would be sufficient. In that event the majority's stirring declaration of a constitutional right—a right so fundamental that its denial, say the majority, cannot be remedied by a fair trial—rings hollow indeed. To declare a right that is virtually impossible for anyone to vindicate is at best a sterile intellectual exercise and at worst a cruel hoax. The superior court judge called this case a "tragedy" for petitioner; we should not make it a miscarriage of justice as well. Supreme Court Opinion at 958, 8 Cal.Rptr.2d 713, 830 P.2d 747 (Mosk, J., dissenting).

An evidentiary hearing was held in this Court July 27–28, 1993. This Court heard testimony from Petitioner's attorneys—Mr. Milloy and Mr. Haughen—from Petitioner, and from Petitioner's family members. This Court also received several declarations from both Petitioner and Respondent. See Petitioner's and Respondent's Supplemental Declarations, filed June 21, 1993.[2]

After holding the evidentiary hearing and receiving all the available evidence, this Court can now determine (1) whether Petitioner was prejudiced, (2) whether he would have accepted the plea, and (3) whether he is now entitled to relief.

He was; he would have; he is.

### III. Petitioner has satisfied Strickland

A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To obtain relief for a violation of this right, a defendant must show that (1) his or her attorney's performance was, under all the circumstances, unreasonable under prevailing professional norms, and (2) that there is a "reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different." *Strickland*, 466 U.S. at 687–694, 104 S.Ct. at 2064–2068.

### A. Petitioner's attorney's performance was, under all the circumstances, unreasonable under prevailing professional norms because of counsel's failure to advise Petitioner of the correct consequences of going to trial.

■ There is no doubt that the error alleged constitutes a violation under the first *Strickland* prong. As the California Supreme Court noted,

> We conclude, as have all federal and state courts presented with this issue, that ... where counsel's ineffective representation results in a defendant's rejection of an offered plea bargain, and in the defendant's decision to proceed to trial ... [a claim of ineffective assistance of counsel is raised].

Supreme Court Opinion at 934, 8 Cal.Rptr.2d 713, 830 P.2d 747. *See also Hill v. Lockhart*, 474 U.S. 52, 57, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985) ("Although our decision in *Strickland* ... dealt with a claim of ineffective assistance of counsel in a capital sentencing proceeding, ... the same two-part standard seems to us applicable to ineffective assistance claims arising out of the plea process."); cases cited in 8 A.L.R.4th 660.

In the May 26, 1993, Order, this Court found that the first *Strickland* prong was satisfied under the facts of the instant case. Order of May 26 at 4 (citing *United States v. Day*, 969 F.2d 39, 43–45 (3rd Cir.1992)).

### B. Petitioner was prejudiced by his counsel's ineffective advice by demonstrating a reasonable probability that, but for counsel's errors, the result would have been different.

To satisfy the second *Strickland* factor, a petitioner must demonstrate prejudice. Prejudice is demonstrated when Petitioner proves a "reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different." *Strickland*, 466 U.S. at 687–694, 104 S.Ct. at 2064–2068. To prove prejudice here, Petitioner was required to show that (1) Petitioner would have accepted the plea with the advice of competent counsel, and (2) the trial court would

---

**2.** Petitioner filed declarations from attorney William Milloy and San Diego Superior Court Judge Frederic Link. Respondent filed declarations from Deputy District Attorney Luis Aragon, Deputy District Attorney Albert Barret, and Senior Probation Officer John Johnson.

have accepted the plea. Petitioner has proved both.

*1. Petitioner has proved that there is a reasonable probability that he would have accepted the plea.*

■ Petitioner has proved by a preponderance of evidence that there is a reasonable probability that, had he known the true sentencing ramifications of losing at trial, he would have accepted the plea offer.

**(a) Petitioner has met the requirement of objective evidence**

In denying Petitioner's writ of habeas corpus, the California Supreme Court announced a standard by which prejudice in claims for pre-plea ineffective assistance of counsel claims must be proven:

> ... [A] defendant's self-serving statement—after trial, conviction, and sentence—that with competent advice he or she would have accepted a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence.

Supreme Court Opinion at 938, 8 Cal.Rptr.2d 713, 830 P.2d 747. Justice Mosk disagreed with the majority's analysis and wrote, in dissent, "what the majority give with one hand they take away with the other." Supreme Court Opinion at 952, 8 Cal.Rptr.2d 713, 830 P.2d 747 (Mosk, J., dissenting).

This Court again refuses to decide the constitutionality of the California Supreme Court's ruling, and instead finds that Petitioner is entitled to relief, even under California's "objective evidence" requirement.

This Court finds the following objective evidence in support of Petitioner's claim that, but for the incompetent advice, he would have accepted the plea: [3]

**(i) Petitioner stated that had he received competent advice, he would have accepted the offer.**

Petitioner is a credible witness and presented believable testimony that supports his contention that he would have accepted the plea had he known of the true exposure. This Court considers Petitioner's testimony in light of the California Supreme Court's statement that a defendant's self serving statement "is insufficient *in and of itself* to sustain the defendant's burden of proof as to prejudice." Supreme Court Opinion at 938, 8 Cal.Rptr.2d 713, 830 P.2d 747 (emphasis added). This Court finds Petitioner's testimony probative. Since Petitioner's testimony is not being considered "in and of itself," but rather with other evidence presented at the hearing, this Court grants Petitioner's assertions some weight.

**(ii) Mr. Milloy's testimony provides further objective evidence that Petitioner would have accepted the plea.**

At the evidentiary hearing, Mr. Milloy testified that he had known Petitioner since Petitioner was young, that he had coached Petitioner in little league, and that he viewed Petitioner as he would a family member.[4]

When asked what Petitioner would have done had Mr. Milloy advised Petitioner correctly, Mr. Milloy speculated that Petitioner would have accepted the plea. To corroborate his speculation, Mr. Milloy stated that had he been aware of the exposure of a life sentence, Mr. Milloy would have forced Petitioner to accept the plea or, alternatively, he

---

**3.** As a preliminary consideration, this Court notes that it is in a superior position to decide the facts here. Unlike the California Supreme Court which made its determination on the papers, this Court has heard the testimony of many witnesses.

The Ninth Circuit has noted in another context that the judge hearing testimony is "in a unique position to observe the demeanor of [declarants] ... while we have only the cold record, which is sterile by comparison." *United States v. Wolf,* 813 F.2d 970, 975 (9th Cir.1987).

As this Court noted in its Order granting an evidentiary hearing, "In the instant case, the California Supreme Court made its determination on the 'cold record' alone. The important determination of credibility was never made." Order of May 26, 1993, at 6–7. Having heard the testimony presented at the evidentiary hearing, this Court has assessed the credibility and sincerity of all witnesses.

This Court's factual findings based on demeanor are entitled to considerable deference under 28 U.S.C. Section 2254(d). *Patton v. Yount,* 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984).

**4.** Transcript of evidentiary hearing not yet available.

would have withdrawn as Petitioner's counsel.

This Court found Mr. Milloy a highly credible witness. Respondent's contention that Mr. Milloy's testimony is impeached by his interest in Petitioner's welfare is not dispositive. Mr. Milloy's statements are entitled to heightened credibility because the very statements that are beneficial to Petitioner are harmful to Mr. Milloy's own professional reputation. Consequently, Mr. Milloy's testimony is further objective evidence that Petitioner was prejudiced.

### (iii) Petitioner's family members' testimony corroborates the finding that Petitioner was prejudiced.

Respondent's assertion that this Court should not consider the admittedly self-serving testimony of Petitioner's family is without merit. Again, this Court has weighed the self-serving aspect of Petitioner's family's testimony. As with Petitioner's own testimony, this Court finds that the family testimony is entitled to some weight and thus further contributes to the objective evidence supporting Petitioner's claim.

### (iv) Petitioner was rational and followed advice.

The testimony of Petitioner, Petitioner's attorneys, and Petitioner's family indicates that Petitioner was rational throughout the period at issue and that Petitioner listened to the advice of his attorney and his family. Since a rational person would have at least considered the difference in possible sentences in making an informed choice regarding the plea offer, this Court notes a reasonable probability that Petitioner here would have accepted the offer had he known the true exposure. In so finding, this Court does not intend to insert its own view of what a defendant in Petitioner's position should or should not do. Instead, this Court finds that a reasonable person analysis provides additional objective evidence of a probability that the result would have been different.

### (v) Petitioner based his decision to go to trial on incorrect risk factors.

Respondent alleges that when he decided to go to trial, Petitioner took a chance and lost. Therefore, Respondent argues, Petitioner should not get a second opportunity—a second bite at the apple. I disagree. The chance Petitioner was told he was taking was not the same chance he took.

In his 1854 inaugural address as professor and dean of the faculty at the University of Lille in Douai, France, Louis Pasteur observed that "chance favors only those minds which are prepared." *A Treasury of the World's Great Speeches*, p. 473 (Houston Peterson, ed. 1954). In this case, it is obvious that Petitioner was not prepared for the chance he took.

The risk to which Petitioner was told and believed he would be exposed were he found guilty at trial was an eight year sentence, of which he would serve four years in custody, six months of which in a half-way house. The plea, as Petitioner understood it through his counsel's advice, was for a five year sentence, of which he would serve two and a half years, six months of which in a half-way house. Petitioner allegedly stated that he could serve the one and a half year difference "standing on his head."

Petitioner's sentence after trial was not the eight years that Mr. Milloy had mistakenly predicted, but rather an indeterminate life sentence. Under his sentence, Petitioner will not be eligible for parole until he has served at least sixteen and two-thirds years. Unlike the one and a half year difference in sentences between the plea and the minimum post-trial sentence, the actual difference in time of sentence was closer to fifteen years. Even discounting Petitioner's belief that he had a seventy to eighty percent chance of winning at trial, the minimum difference in risk was almost tenfold.[5]

5. Petitioner was led to believe that if he were to lose at trial, he would serve an additional 1.5 years in prison. $(4.0 - 2.5 = 1.5)$. Under his current sentence, Petitioner will not be eligible for parole until he has served sixteen and two-thirds years. The difference between the actual minimum sentence and the proposed plea is over 14 years $(16.625 - 2.5 = 14.125)$.

Discounting the risk by Petitioner's believed probability of success at trial (average 75%, according to Mr. Milloy), Petitioner could have believed that he would have had a 25% chance of serving an additional year and a half. The "val-

This Court finds that Petitioner was not informed of the true consequences· of his choice. Petitioner based his decision not to accept the plea on a miscalculated risk. General George S. Patton once wrote, "Take calculated risks." Letter to Cadet George S. Patton IV (June 6, 1944). *Bartlett's Familiar Quotations,* 14th ed. at 987b. Here, Petitioner's risk was not properly calculated. That Petitioner made a misinformed decision provides objective evidence of a reasonable probability of a different result had the proper risks been considered. As Justice Mosk noted in dissent,

> "A moment's reflection will show this to be a completely rational way of thinking: a chance of success that is high enough to warrant our taking a modest risk may well not be high enough to warrant our taking a much greater risk; personal investment decisions, for example, are made on this reasoning every day. It follows that the true motivation for petitioner's decision to decline the offer was not counsel's estimate of the chance of acquittal but counsel's incompetence in informing petitioner that his sentencing exposure was four years actual time instead of more than sixteen."

Supreme Court Opinion at 951, 8 Cal.Rptr.2d 713, 830 P.2d 747 (Mosk, J., dissenting).

As additional objective evidence of Petitioner's reliance on the miscalculated risk, attorney Haughen's testimony provides further corroboration. In a conversation with Mr. Haughen before trial, Petitioner revealed that he would not be willing to spend an extra year and a half in prison for a crime he did not commit. The clear implication of Petitioner's statement is that the difference in time was a key factor in the decision to go to trial. Accordingly, had Petitioner been aware of the true consequences, there is a reasonable probability that he would not have gone to trial.

**(vi) Petitioner's mind was not closed to the idea of plea bargaining.**

At the evidentiary hearing, Petitioner and Mr. Milloy both testified that two settlement conferences had been held before trial. Had Petitioner been adverse to the idea of a plea bargain, the second settlement conference would not have taken place. The Sixth Circuit has held that a plea counter-offer constitutes sufficient "objective" evidence to corroborate the type of ineffective assistance claim at issue here. *Turner v. State of Tenn.,* 858 F.2d 1201, 1206 (6th Cir.1988), *judgment vacated on other grounds* 492 U.S. 902, 109 S.Ct. 3208, 106 L.Ed.2d 559 (1989). Similarly, the fact that Petitioner here had two conferences is also objective evidence of a reasonable probability that the result would have been different.

**(b) Respondent's arguments do not require a different result** .

Respondent argues that several factors reduce the likelihood that Petitioner would

---

ue" of that risk would be .25 times 1.5 years, or .375 years.

The "value" of Petitioner's current minimum sentence reduced by 75% is .25 times 14.125, or 3.531 years.

The difference in the advised risk and the actual risk is computed as follows: 3.531/.375 = 9.417. Taking into account Petitioner's belief that he had a 75% chance of winning at trial and Petitioner's actual and predicted sentences, the difference in risk is almost tenfold.

The above calculations assume that Petitioner will be paroled at the earliest possible time. As Justice Mosk noted in his dissenting opinion, however:

> Indeed, petitioner could well be imprisoned even longer than 16⅔ years.... The [parole] board may find a prisoner *unsuitable* for parole, however, on a variety of grounds.... In recent years the board has consistently found the vast majority of life prisoners to be unsuitable for parole.

Supreme Court Opinion at 954–55 n. 8, 8 Cal. Rptr.2d 713, 830 P.2d 747 (Mosk, J., dissenting) (citing Bd. of Prison Terms, Ann.Rep. on Life Prisoners, July 1, 1989 Through June 30, 1990 (1991) p. 6).

Justice Mosk's statistic indicates that the difference in Petitioner's sentences, and thus the comparative risk as Petitioner ·might have evaluated it, could only increase.

As a final consideration, Petitioner's ·actual sentence includes the possibility that Petitioner will never be released. As Petitioner's family members testified, had they known that the risk included confinement for the rest of Petitioner's life, they would have pressured Petitioner to accept the plea offer. A life sentence without parole—a possibility for Petitioner here—further increases the risk that Petitioner did not consider by an unknowable and unfathomable factor.

have accepted the offer, even with competent advice.

First, Respondent argues that Petitioner believed he had a strong case. The extensive testimony at the evidentiary hearing indicated that Petitioner and Mr. Milloy indeed believed that Petitioner had a good chance of winning at trial. Even assuming that Mr. Milloy's seventy to eighty per cent "probability of success" prediction was correct, however, the ten-fold increase in Petitioner's exposure is sufficient to cast doubt on whether Petitioner would have been willing to risk going to trial.

Even placing weight on Respondent's argument, Petitioner has still met his burden of demonstrating, by a preponderance of the evidence, a reasonable probability that the result would have been different.

Next, Respondent argues that Petitioner continually professed his innocence throughout the proceedings. *See* Declarations of Luis Aragon, Albert Barret, and John Johnson.

The California Supreme Court relied on Petitioner's statements of innocence to preclude Petitioner from offering evidence that he would have accepted the plea. Supreme Court Opinion at 940.

Respondent's argument and the statement by the California Supreme Court would punish a defendant who has received constitutionally ineffective assistance of counsel for presenting a conceivably valid defense. In *United States v. Cronic*, 466 U.S. 648, 656 n. 19, 104 S.Ct. 2039, 2045 n. 19, 80 L.Ed.2d 657 (1984), the Supreme Court noted that even when a defendant has a bona fide defense, counsel may still advise a guilty plea.

Here, counsel stated that not only would he have advised a guilty plea had he known the true exposure, but he would have "forced" Petitioner to take it. In light of the testimony adduced at the evidentiary hearing, Petitioner's assertion of his innocence does not defeat Petitioner's showing by a

preponderance of the evidence a reasonable probability that the result would have been different.[6]

*2. Petitioner has proved a reasonable probability that the California trial court would have accepted the plea.*

■ This Court does not decide whether a petitioner must demonstrate that a trial court would have accepted the plea offer to prove prejudice. Instead, assuming such a requirement exists, this Court finds that Petitioner has met that requirement.

The overwhelming evidence—including evidence specific to this case, expert evidence based on the facts of this case, general trend evidence of plea practice in state court, and the opinions of state judges and justices who ruled on the state habeas petition—demonstrates a reasonable probability that the trial court would have accepted the plea offered Petitioner.

First, in his opinion denying the state habeas petition, Superior Court Judge Bernard Revak stated, "... [M]y history in the criminal business for over 25 years indicates to me that [pleas] are almost routinely taken in a trial department or readiness department." Justice Mosk noted the following of Judge Revak: "Prior to his appointment to the bench in 1987, ... Judge Revak had served for 22 years as a local prosecutor, including 2 decades as a San Diego deputy district attorney." Supreme Court Opinion at 957, n. 10, 8 Cal.Rptr.2d 713, 830 P.2d 747 (Mosk, J., dissenting).

Next, the District Court of Appeals found that the trial court would have accepted the plea: "We find, however, that petitioner has met his burden of showing that the plea bargain would in all likelihood have been accepted by all parties ..." Slip Op. at 8. The District Court's opinion was decided by Justices Huffman and Froehlich, each of whom has considerable experience with California criminal law.[7]

---

6. Additionally, the fact that Petitioner had previously been convicted of a felony might also weigh in favor of Petitioner's willingness to plead guilty to a crime, even if he professed his innocence. A person with a prior felony record might be more

willing to accept an additional felony than a person with a "clean slate."

7. Justice Froehlich is a former Superior Court Judge. Justice Huffman is a former Chief Deputy District Attorney, Deputy Attorney General,

Although the California Supreme Court stated that it did not need to decide the issue, Supreme Court Opinion at 946, n. 12, 8 Cal.Rptr.2d 713, 830 P.2d 747, Justice Mosk—former California Attorney General—stated that Petitioner "has met his burden of showing it is reasonably probable that the trial court would have approved the plea bargain herein." Supreme Court Opinion at 957–58, 8 Cal.Rptr.2d 713, 830 P.2d 747 (Mosk, J., dissenting).

Additionally, Petitioner offered the declaration of Judge Frederic Link, in addition to the declarations of several local defense counsel to further bolster his argument that the trial court would have accepted the plea.

Finally, Petitioner presented statistical evidence of the prevalence of acceptance of pleas. *See* Petition at 14, n. 20.

Taken together, this Court finds that Petitioner has demonstrated by a preponderance of the evidence a reasonable probability that the trial court would have accepted the plea offer.

Having demonstrated prejudice, Petitioner is entitled to relief.

### C. Petitioner has demonstrated unreliability and fundamental unfairness.

The Supreme Court has recently added an additional requirement for an ineffective assistance claim: "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, — U.S. —, —, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993). For all of the reasons stated herein, this Court finds that Petitioner has demonstrated that his counsel's deficient performance rendered the result of his trial unreliable and fundamentally unfair.

### IV. Further proceedings and relief

■ Petitioner requests that his conviction be vacated due to ineffective assistance of counsel.

In evaluating the appropriate remedy available to a defendant in Petitioner's position, the California Supreme Court suggested

that the following relief would be appropriate:

> the district attorney shall submit the previously offered plea bargain to the trial court for its approval, unless the district attorney within 30 days elects to retry the defendant and resume the plea negotiation process. If the plea bargain is submitted to and approved by the trial court, the judgment shall be modified consistent with the terms of the plea bargain.

> .    .    .    .    .

> The right to a new trial, however, does not leave the defendant with an "empty" remedy. A defendant is in a better position, in preparing for a new trial following trial and conviction, to evaluate the strengths and weaknesses of both the prosecution's case and the defense's case. Furthermore, such a defendant is restored the bargaining leverage often afforded by the prosecutor's desire to avoid the time and expense of a new trial and the accompanying uncertainty as to the outcome of the proceedings.

Supreme Court Opinion at 944, 8 Cal.Rptr.2d 713, 830 P.2d 747. This Court finds the California Supreme Court's suggestion unsatisfactory.

The Third Circuit has held that "the district court would have considerable discretion in fashioning a remedy appropriate under the circumstances ..." *United States v. Day*, 969 F.2d at 47. The *Day* court also noted that "it does not follow that the relief of 'specific performance' of a plea bargain is never appropriate." *Id.*

■ With the above suggestions in mind, this Court begins its analysis with the basic tenet that a remedy for a Sixth Amendment violation "should be tailored to the injury suffered and should not unnecessarily infringe on competing interests." *United States v. Morrison*, 449 U.S. 361, 364, 101 S.Ct. 665, 667, 66 L.Ed.2d 564 (1981).

This Court finds that a new trial cannot remedy the specific deprivation suffered. Consequently, since the harm was suffered before trial, "[o]ne more fair trial, or even a

series of them, would not necessarily revive the lost chance." *State v. Kraus*, 397 N.W.2d 671, 674 (Iowa 1986). *Accord Caruso v. Zelinsky*, 689 F.2d 435, 438 (3rd Cir.1982).

The Sixth Circuit has held that "the only way to neutralize the constitutional deprivation suffered by [a defendant] would seem to be to provide [the defendant] with an opportunity to consider the State's ... plea offer with the effective assistance of counsel." *Turner v. State of Tenn.*, 858 F.2d at 1208, quoting *Mabry v. Johnson*, 467 U.S. 504, 510 n. 11, 104 S.Ct. 2543, 2548 n. 11, 81 L.Ed.2d 437 (1984) (specific performance of a plea agreement, though not required, is a constitutionally permissible remedy).

The State has presented no compelling "competing interests" in opposition to the Petition and merely states that "Petitioner is not now entitled to the windfall of a reversal of his conviction." Respondent's Answer at 23.

This Court agrees with Petitioner that the remedy for a constitutional violation is not a "windfall." As the Supreme Court has stated, "[T]he Constitution constrains our ability to allocate as we see fit the cost of ineffective assistance. The Sixth Amendment mandates that the State bear the risk of constitutionally deficient assistance of counsel." *Kimmelman v. Morrison*, 477 U.S. 365, 379, 106 S.Ct. 2574, 2585, 91 L.Ed.2d 305 (1986).

The state of California bore the risk of ineffective assistance, so the State must now pay the price by reinstating the plea offer. Specific performance by the state's reinstatement of the prior five-year plea offer is thus an appropriate remedy in the instant case. *See* Todd R. Falzone, *Ineffective Assistance of Counsel: A Plea Bargain Lost*, 28 Cal. W.L.Rev. 431, 450–52 (1991) (appropriate remedy is reinstatement of the lost plea bargain).

Respondent argued in a Motion to Amend the judgment that this Court should require the State of California to offer Petitioner a plea offer of eight years. Noting this Court's finding that Petitioner went to trial under the assumption that, if convicted, he faced a sentence of eight years, Respondent makes the following argument:

> Petitioner is at most entitled to the sentence which he [believes] he risked by going to trial. Altering the judgment to provide for an eight year sentence rather than the plea offer sentence of five years puts Petitioner in the position which the Court found Petitioner believed he was in when he decided to reject the five year plea offer and proceed to trial. Petitioner is entitled to no more.

Respondent's Brief at 2.

This Court agrees with Petitioner's assessment:

> The logic of respondent's proposal ... fails because the wrong to be righted is petitioner's ability to accept the pre-trial plea settlement offer made to him, but rejected due to ineffective assistance of counsel. The prejudice to petitioner stems from that pre-trial deprivation, and because that is the wrong to be righted, post-*trial* expectations are irrelevant to the issue of remedy.

Petitioner's Brief at 2.

Additionally, this Court finds that Respondent's proposed eight year figure was a "mistaken" figure that arose out of the constitutionally ineffective advice of Petitioner's counsel. The "mistaken" eight year figure is a fiction which has no basis in law or in fact, except that it was used by Petitioner's counsel when he ineffectively and unconstitutionally advised Petitioner.

To require the State to offer a "mistaken" eight year plea, rather than the actual offer of five years, would be both illogical and contrary to settled precedent.

Respondent offered no case to support its proposal that this Court fashion a remedy from an unconstitutional "mistake." As this Court notes in today's Order, cases and commentators have found specific performance of a plea agreement to be the appropriate remedy. *See supra.*

Finally, in granting Petitioner relief, this Court notes that it does not take this action lightly. "Specific performance is at the extreme end of the range of constitutionally permissible remedies." *Turner v. State of Tenn.*, 726 F.Supp. 1113, 1117 (M.D.Tenn. 1989). Here, as in *Turner*, "The particularly

egregious facts of this case … lead the Court to believe that such a remedy is appropriate in this instance." *Id.*

This Court is not unmindful of the public policy concerns raised by this case. Other courts have considered and rejected the fear that defendants and their counsel would engage in a form of "sandbagging" whereby the defendant would effectively have two opportunities—the first at trial and the second on a petition for writ of habeas corpus. This Court agrees with the Third Circuit's opinion in *Day* and cites it at length:

> We agree that courts should be wary of this sort of claim because defendants will always want the best of both worlds: the chance at acquittal at trial, yet the chance to plead guilty if the trial defense fails. Nevertheless, we do not think that such concerns justify refusing to consider this sort of claim altogether.
>
> Most defense lawyers, like most lawyers in other branches of the profession, serve their clients and the judicial system with integrity. Deliberate ineffective assistance of counsel is not only unethical, but usually bad strategy as well. For these reasons and because incompetent lawyers risk disciplinary action, malpractice suits, and consequent loss of business, we refuse to presume that ineffective assistance of counsel is deliberate. Moreover, to the extent that petitioners and their trial counsel may jointly fabricate these claims later on, the district courts will have ample opportunity to judge credibility at evidentiary hearings.

*United States v. Day,* 969 F.2d at 46, n. 9. The policy concern addressed in *Day* does not disentitle Petitioner to relief.

IT IS HEREBY ORDERED that the writ of habeas corpus shall issue in 30 days unless the State of California presents its former five-year plea offer to Petitioner for his consideration with the effective assistance of counsel. The State of California shall process the plea agreement in accordance with applicable substantive and procedural laws of the State of California.

IT IS SO ORDERED.