Michael Wayne RIGGS, Petitioner,

v.

J.W. FAIRMAN Jr., Warden,
Respondent.

No. CV 00–4266–CBM(E).

United States District Court,
C.D. California.

Dec. 14, 2001.

Donald K. Falk, Mayer, Brown, Platt, Washington, DC, for Petitioner.

Craig S. Nelson, Kyle Niki Shaffer, California Attorney General's Office, San Diego, CA, for Respondent.

## ORDER ADOPTING FINDINGS, CONCLUSIONS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE

MARSHALL, District Judge.

Pursuant to 28 U.S.C. § 636, the Court has reviewed the pleadings and papers herein and the attached Report and Recommendation of United States Magistrate Judge. The Court approves and adopts the Magistrate Judge's findings, conclusions and recommendations.

IT IS ORDERED that a conditional writ be granted. Respondents shall release Petitioner from custody and discharge him from all other adverse consequences of his conviction in Superior Court case number E–019488, unless Petitioner is brought to retrial within ninety (90) days of the date the Judgment herein becomes final, plus any additional delay authorized under State law.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Report and Recommendation of United States Magistrate Judge and the Judgment by United States mail on Petitioner, his counsel, and counsel for Respondent.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

EICK, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Consuelo B. Marshall, Chief United States District Judge, pursuant to 28 U.S.C. section 636 and General Order 194 of the United States District Court for the Central District of California.

## PROCEEDINGS

Petitioner filed a "Petition for Writ of Habeas Corpus By a Person in State Custody" on April 21, 2000. Respondent filed an Answer on June 16, 2000. Petitioner filed a Traverse on July 17, 2000. The Magistrate Judge held an evidentiary hearing on January 25, 2001. Following a series of telephonic status conferences, and continuances requested by the parties, Respondent filed a "Response" and Petitioner filed a "Declaration of Judy Knutson" on August 31, 2001. Petitioner thereafter filed a letter-brief on September 14, 2001. The receipt of evidence in connection with

this matter closed with a "Joint Status Report," filed September 21, 2001, in which both parties declined the opportunity to submit additional evidence.

## OVERVIEW

The State of California prosecuted Petitioner for shoplifting. Ineffective assistance of counsel deprived Petitioner of knowledge essential to an informed consideration of a pretrial plea offer made by the state. Acceptance of the plea offer would have limited Petitioner's sentence to five or six years. After Petitioner rejected the offer, Petitioner received a sentence of 25 years to life under California's Three Strikes Law. The state courts' failure to recognize and remedy counsel's ineffectiveness was "unreasonable" within the meaning of 28 U.S.C. section 2254(d). Consequently, this Court should grant habeas relief.

## FACTS[1]

Petitioner was detained for shoplifting a bottle of vitamins from a grocery store

(Reporter's Transcript ("R.T.") 196, 228–30). The evidence of Petitioner's guilt was overwhelming. A store employee had observed Petitioner take the vitamins and exit the store without paying for the vitamins (R.T. 123–28). Petitioner attempted to escape by running away while jettisoning the vitamins (R.T. 129–33, 186–95). Petitioner made incriminating statements when apprehended (R.T. 196–97, 229).

■ Petitioner's transgression potentially exposed him to a sentence of 25 years to life under California's Three Strikes Law.[2] Petitioner had been convicted of robbery, a "serious or violent" felony,[3] on only one prior occasion: September 14, 1989 (R.T. 311). In this single prior case, however, Petitioner had been convicted of four counts of robbery. *Id.* The conviction on each robbery count, though arising from a single proceeding, could justify a separate "strike."[4] The existence of only two such strikes sufficed to make any subsequent felony (however minor or non-violent) pun-

---

1. Many of the material facts are undisputed. Where disputes exist, the Court's statements in this section, and in the discussion sections that follow, reflect the Court's resolution of the disputes, including those disputes that turn upon witness credibility.

2. The Three Strikes Law consists of two nearly identical statutory schemes. The earlier provision, enacted by the Legislature, was passed as an urgency measure, and is codified as California Penal Code sections 667(b)-(i) (effective March 7, 1994). The later provision, an initiative statute, is embodied in California Penal Code section 1170.12 (effective Nov. 9, 1994). *See generally, People v. Superior Court (Romero)*, 13 Cal.4th 497, 504–505, 53 Cal.Rptr.2d 789, 791–792, 917 P.2d 628 (1996). Petitioner eventually was charged under both statutes (Clerk's Transcript ("C.T.") 44–47, 61–64).

3. For the Three Strikes Law to apply, the first two strikes must be "serious or violent" felonies, such as robbery. *See People v. Cuevas*,

89 Cal.App.4th 689, 703, 107 Cal.Rptr.2d 529, 540 (2001).

4. Twelve days prior to the filing of charges in the present case (C.T.4), the decision in *People v. Campos*, 45 Cal.Rptr.2d 706, 38 Cal.App.4th 1669, 43 Cal.App.4th 189, 47 Cal.App.4th 1366 (Cal.App.1995) *("Campos")* established this principle, binding on all superior courts in California. *See Auto Equity Sales, Inc. v. Superior Court*, 57 Cal.2d 450, 455, 20 Cal.Rptr. 321, 369 P.2d 937 (1962) (decision of every district court of appeal binding on every superior court). Review of the *Campos* decision was not granted until after plea negotiations ended in the present case. *See People v. Campos*, 48 Cal.Rptr.2d 896, 908 P.2d 422 (Cal.1995). Later, a California Court of Appeal reannounced the same rule. *See People v. Allison*, 41 Cal.App.4th 841, 48 Cal.Rptr.2d 756 (1995). Still later, the California Supreme Court confirmed the rule, *People v. Fuhrman*, 16 Cal.4th 930, 940, 67 Cal.Rptr.2d 1, 941 P.2d 1189 (1997).

ishable by a prison term of 25 years to life. *People v. Strong*, 87 Cal.App.4th 328, 344, 104 Cal.Rptr.2d 490, 501 (2001). Furthermore, any prior robbery conviction potentially converted a misdemeanor petty theft offense into a felony of "petty theft with a prior." *See* Cal.Penal Code § 666. Thus, Petitioner's single prior robbery case caused his otherwise misdemeanor theft offense to be chargeable as both a *felony* and as Petitioner's *third* "strike," potentially exposing Petitioner to a life term.

During plea negotiations before the preliminary hearing, Petitioner, the prosecutor and Petitioner's counsel all failed to appreciate Petitioner's potential exposure to a life term. Petitioner knew his own criminal history, but was ignorant of the *Campos* rule, *i.e.*, that the Three Strikes Law permitted charging as separate strikes multiple counts arising in a single prior case (Reporter's Transcript of Proceedings at January 25, 2001 Evidentiary Hearing ("E.R.T.") 24, 39–40). The prosecutor knew Petitioner had suffered convictions for multiple counts of robbery in a single prior case (Exhibits A and B to Joint Status Report, filed September 21, 2001). The prosecutor possessed Petitioner's rap sheet that reflected multiple robbery count convictions (*Id.*). Like Petitioner, however, the prosecutor did not understand the rule of *Campos* (Exhibit A to Joint Status Report). For this reason, in the October 16, 1995 criminal complaint, the prosecutor alleged only one "strike," namely, that Petitioner "was on or about September 14, 1989 . . . convicted of the crime of robbery . . ." (*Id.; C.T.* 4). The prosecutor then offered a plea bargain that would have permitted Petitioner to plead guilty in return for a sentence of six years

(E.R.T.69). The prosecutor later revised her offer to five years (*Id.*).

In contrast to the prosecutor's mistake, the failure of Petitioner's counsel to appreciate her client's potential Three Strikes exposure did not stem from a misunderstanding of the law. Rather, her failure stemmed from lack of fact investigation and mistaken assumptions regarding Petitioner's criminal history. When Petitioner's counsel met with the prosecutor to discuss plea bargaining, Petitioner's counsel had no knowledge of Petitioner's prior criminal record, except to the extent the prior record might have been reflected in the criminal complaint (E.R.T.61, 64–66, 79). Petitioner's counsel had not yet met with Petitioner (E.R.T.13–14, 65–66). Petitioner's counsel did not have Petitioner's rap sheet or make any attempt to obtain the rap sheet (E.R.T.61, 70, 105–106). Petitioner's counsel knew that a look at Petitioner's rap sheet was hers for the asking (asking of the prosecutor, that is), but Petitioner's counsel did not ask (E.R.T. 105–106). With virtually no knowledge of Petitioner's prior record, Petitioner's counsel decided the case was "worth" "32 months" (E.R.T.65, 69, 78–79). She so advised the prosecutor and, later, Petitioner (E.R.T.69, 72, 78–79, 92).

At all material times, Petitioner's counsel understood the vital importance of determining at the earliest possible stage of plea discussions whether a given case had any potential to be charged as a Three Strikes case [5] (E.R.T.79–80, 108, 110–13). She knew the Riverside County District Attorney's Office treated potential Three Strikes cases differently for plea bargaining purposes than it treated all other cases (E.R.T.112–13). In potential Three Strikes cases, the Office's pre-preliminary

---

5. She also knew that, according to the complaint, Petitioner was at least on the cusp of exposure to a life term.

hearing plea offers typically were the best offers ever to be made to the defendant (E.R.T.112–13). And Petitioner's counsel knew it was not unusual for the Office to add into a superseding information charges that had not been alleged in the original complaint (E.R.T.108).

The state's plea offer to Petitioner ceased to be open at the time of the preliminary hearing (Joint Status Report at 2). Prior to that time, Petitioner's counsel met with Petitioner for only a few minutes (E.R.T.14, 21–22, 73). Petitioner's counsel showed Petitioner the complaint and asked Petitioner if, as alleged, he had been convicted of robbery on September 14, 1989 (E.R.T.97). Petitioner responded "yes," and said he hoped to get this prior robbery case set aside (E.R.T.35–36, 69–70, 97). Petitioner gave his counsel the name of an attorney familiar with this prior case (E.R.T. 15–16, 70). Petitioner's counsel wrote down her intent to call this attorney, but failed ever to do so (E.R.T. 96; Petitioner's Exhibits 3 and 4 to Evidentiary Hearing). Petitioner's counsel asked Petitioner if he had any "other" prior serious or violent felony convictions (E.R.T.97). Petitioner said "no" (*Id.*). Unlike the prosecutor, and unlike Petitioner, Petitioner's counsel knew a single prior case involving multiple counts could support multiple strikes (E.R.T.77, 107). Yet, Petitioner's counsel did not inquire into the details of the prior robbery case and did not ask whether the case had involved more than one count (E.R.T.15, 72). Instead, Petitioner's counsel assumed incor-

rectly that the case had involved only one count (*Id.*).

Petitioner's counsel told Petitioner his maximum exposure was nine years (E.R.T.17). Petitioner's counsel conveyed to Petitioner the plea offers of five and six years and counsel's assessment that the case merited only 32 months (E.R.T.69, 78–79, 92). Petitioner's counsel also told Petitioner she thought he should wait for a better offer[6] (E.R.T.16, 19, 21). Petitioner, who was reluctant to accept an offer requiring an admission to a prior conviction as to which he still claimed innocence,[7] followed his counsel's advice to reject the plea offer and wait for a better deal (E.R.T.19, 21–22, 35).

A better deal never came. As of the October 30, 1995 preliminary hearing, the prosecutor was of a mind to attempt to ensure that Petitioner receive "every conceivable amount of the time that he so richly deserves on his next trip to state prison" (Joint Status Report, Exhibit B). Shortly after the preliminary hearing, the prosecutor's office realized it could charge Petitioner's case as a Three Strikes case and did so in an Information, filed November 13, 1995 (C.T.44–47).

After receiving notice that he faced 25 years to life, and after receiving substitute counsel, Petitioner sought to recapture the lost plea opportunity (E.R.T.48). The prosecution refused. Prior to trial, Petitioner moved the trial court for relief based on the alleged ineffective assistance of prior counsel. The Court denied relief, finding Petitioner's prior counsel had performed in an "adequate fashion under the

---

**6.** If Petitioner's counsel had been aware of Petitioner's potential Three Strikes exposure, she would have urged Petitioner to accept any available deal (although she also would have turned the case over to another attorney within her office) (E.R.T.109–12).

**7.** Previously, Petitioner unsuccessfully had sought to overturn the result of the robbery case through habeas corpus. *See Riggs v. Rowland*, CV 94–2999–ER(E); *Riggs v. Rowland*, CV 92–5176–ER(E). During plea discussions in the theft case, no challenge to the robbery case was pending in any court (E.R.T.44–45).

information that was available to her at the time" (R.T. 16).

Following Petitioner's conviction, the imposition of his 25 years to life sentence, and an affirmance on appeal, Petitioner filed a habeas corpus petition in the California Supreme Court (Lodgment No. 8). This petition alleged, *inter alia,* ineffective assistance of counsel. The petition requested an evidentiary hearing (*Id.*). The California Supreme Court summarily denied the petition without comment (Lodgment No. 9).

## GENERAL LEGAL STANDARDS

The Petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214, signed by the President on April 24, 1996 ("AEDPA"). Therefore, AEDPA's provisions apply. *See Lindh v. Murphy,* 521 U.S. 320, 336–37, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Jeffries v. Wood,* 114 F.3d 1484, 1499 (9th Cir.) (en banc), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586, 139 L.Ed.2d 423 (1997). AEDPA provides, in relevant part, that an application for writ of habeas corpus on behalf of a person in state custody shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (as amended); *Williams v. Taylor,* 529 U.S. 362, 405–09, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Van Tran v. Lindsey,* 212 F.3d 1143, 1149 (9th Cir.), *cert. denied,* 531 U.S. 944, 121 S.Ct. 340,

148 L.Ed.2d 274 (2000). Where a petitioner requests but is denied an evidentiary hearing in state court, the federal habeas court may conduct an evidentiary hearing, notwithstanding 28 U.S.C. section 2254(e). *See Williams v. Taylor,* 529 U.S. 420, 430–32, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000); *Jones v. Wood,* 114 F.3d 1002 (9th Cir. 1997).

To establish constitutionally ineffective assistance of counsel, a petitioner must prove: (1) "counsel's representation fell below an objective standard of reasonableness;" and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *See Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (*"Strickland"*). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. *Strickland* "has long been clearly established federal law determined by the Supreme Court of the United States," within the meaning of section 2254(d). *Baylor v. Estelle,* 94 F.3d 1321, 1323 (9th Cir.1996), *cert. denied,* 520 U.S. 1151, 117 S.Ct. 1329, 137 L.Ed.2d 489 (1997); *see Williams v. Taylor,* 529 U.S. 362, 391, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) ("It is past question that the rule set forth in *Strickland* qualifies as 'clearly established Federal law . . .' That the *Strickland* test 'of necessity requires a case-by-case examination' of the evidence obviates neither the clarity of the rule nor the extent to which the rule must be seen as 'established' by this Court") (citations omitted). "The Supreme Court has long held that *Strickland* applies to ineffective assistance claims arising out of the plea bargaining process." *Wanatee v. Ault,* 259 F.3d 700, 702 (8th Cir.2001) (citing *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)) (granting habeas relief where de-

fendant rejected a plea offer due to ineffective advice from counsel).

### I. Counsel's Conduct Fell Below an Objective Standard of Reasonableness.

■ A defense attorney's exclusive reliance upon a defendant's representations regarding criminal history, or counsel's concomitant failure to "run a criminal records check," "is certainly not laudatory." *United States v. Pease,* 240 F.3d 938, 941 (11th Cir.), *cert. denied,* —— U.S. ——, 122 S.Ct. 381, —— L.Ed.2d —— (2001). Nevertheless, "a determination of whether reliance on a client's statement of his own criminal history constitutes deficient performance depends on the peculiar facts and circumstances of each case." *Id.* at 942 (no per se ineffectiveness for reliance on defendant's statements); *accord Johnson v. Cabana,* 805 F.2d 579, 581 (5th Cir.1986). Under the "peculiar facts and circumstances" of the present case, counsel's failure to review Petitioner's rap sheet, failure to ask Petitioner specific questions concerning the nature of Petitioner's prior robbery case and failure otherwise to investigate the prior case constituted ineffective assistance of counsel.

The "peculiar facts and circumstances" involved in the present case included the extraordinary serious penal consequences of California's Three Strikes Law. In applying California decisions following *Strickland,* a California court recently stated:

> "We hold, given the serious penal consequences of the 'Three Strikes' law, that it is the duty of defendant's counsel, in advance of a plea or trial predicated upon convictions charged as strikes, to determine, on the basis of records which are necessary to an informed decision, whether the convictions are strikes under the California law, to advise his or her client accordingly, and that it is

ineffectiveness of counsel to fail to do so." *People v. Morgan,* 91 Cal.App.4th 1324, 1327, 111 Cal.Rptr.2d 502 (2001); *cf. United States v. Day,* 969 F.2d 39, 43 (3rd Cir.1992) (because of the grave implications of "career offender status" under the Federal Sentencing Guidelines, counsel's failure to know and discuss such implications at the plea stage constitutes ineffective representation).

Beyond the gravity of the Three Strikes Law in general, the somewhat counterintuitive potentiality of multiple strikes from a single prior case rendered imperative a more searching inquiry than Petitioner's counsel performed. Petitioner's counsel merely asked Petitioner if the charged prior conviction was his and if he had any "other" prior serious or violent felony convictions. This questioning plainly was insufficient to determine whether there existed multiple strikes arising from the single prior case. *Cf. Lewis v. Lane,* 832 F.2d 1446, 1457 (7th Cir.1987), *cert. denied,* 488 U.S. 829, 109 S.Ct. 83, 102 L.Ed.2d 59 (1988) (ineffective for counsel to rely upon defendant's representation that defendant thought the information in the rap sheet accurate where counsel did not explain to the defendant "the critical distinctions between arrest and conviction and between felony and misdemeanor").

The charging and plea bargaining practices of the Riverside County District Attorney's Office also constituted "peculiar facts and circumstances" mandating a more thorough initial investigation of Petitioner's criminal history. Petitioner's counsel knew it was not unusual for the complaint to fail to contain all of the ultimate charges, including all of the strike allegations that later might be alleged in the superseding information. Petitioner's counsel also knew that, in potential Three Strikes cases, the initial plea offer may

well be more beneficial to the defendant than any offer likely to be extended subsequently. And, based upon what Petitioner's counsel knew, one more potential strike lurking in Petitioner's relevant criminal history (as an additional count in the prior robbery case or otherwise) would transform Petitioner's maximum exposure from nine years to life in prison.[8]

Another peculiar circumstance weighing in favor of the conclusion of unreasonableness is the ease with which Petitioner's counsel could have gained the critical information concerning Petitioner's criminal history. An oral request for the rap sheet when counsel met with the prosecutor would have done it. A phone call to the attorney to whom Petitioner directed counsel would have done it. A single follow-up question to Petitioner concerning Petitioner's prior robbery case would have done it. The Court appreciates that Petitioner's counsel handled a high volume of cases, had limited time to devote to each one, and had only days between the receipt of Petitioner's file and the preliminary hearing. Nevertheless, to forgo spending the single minute or so necessary to request and review the rap sheet, make the phone call or ask Petitioner the necessary question was objectively unreasonable under the circumstances of the present case.

■ A court generally does not second-guess defense counsel where counsel's actions or inactions might have been the product of a strategic choice or tactical decision. In the present case, however, there existed no strategic or tactical reason to have forgone virtually all significant inquiry into Petitioner's criminal history.

*Cf. Cook v. Lynaugh,* 821 F.2d 1072, 1078 (5th Cir.1987) (counsel's failure to investigate prior criminal history held ineffective, where counsel made no claim of any conscious decision not to investigate).

Respondent suggested in the Answer (and the prosecution suggested to the Superior Court) that the allegedly unsettled nature of California's Three Strikes Law justified the failure by Petitioner's counsel to inquire into the possibility of multiple counts in the prior robbery case. This suggestion must be rejected. First, as Respondent now concedes (E.R.T.158), prior to Petitioner's plea discussions, the *Campos* decision had settled the law (at least as far as the lower courts were concerned). Second, even if the law had been unsettled, it would have been ineffective for counsel to assume the law later would be settled in a manner that would favor the defense. In other words, reasonable counsel would not have assumed California courts would decide that the Three Strikes Law precluded the use as separate strikes of multiple counts arising in a single case. *See Risher v. United States,* 992 F.2d 982, 983–84 (9th Cir.1993) (even though the Ninth Circuit had declared the Sentencing Reform Act unconstitutional, counsel was ineffective for failing to warn the defendant that the Supreme Court might rule otherwise).

■ In sum, under *Strickland,* the conduct of Petitioner's counsel fell below an objective standard of reasonableness. The contrary conclusion of the state courts constituted an "unreasonable application" of clearly established federal law, within the meaning of 28 U.S.C. section 2254(d).[9]

---

8. Contrary to Respondent's argument, the differential between nine years and life in prison is sufficiently "gross" to implicate Sixth Amendment concerns. *See, e.g., Chacon v. Wood,* 36 F.3d 1459, 1464 (9th Cir.1994) (dif-

ference between three months and ten years held sufficiently "gross").

9. Where there is no state court reasoned decision, a federal habeas court must undertake an "independent review of the record." *Del-*

## II. *Petitioner Has Demonstrated a Reasonable Probability of a Different Outcome.*

 But for counsel's ineffectiveness, Petitioner would have known during plea negotiations that his potential exposure was 25 years to life. As discussed below, Petitioner has demonstrated a reasonable probability that, with this knowledge, he would have accepted the state's plea offer and the outcome of the proceeding would have been different. Therefore, counsel's ineffectiveness prejudiced Petitioner.

Respondent argues Petitioner would not have accepted the offer, because Petitioner still hoped to overturn the prior robbery conviction. The Court believes Petitioner did maintain such a hope and did express the hope to his counsel, though not in the supremely confident manner counsel now recalls (E.R.T.36, 41). And, indeed, there can exist no certainty regarding what Petitioner would have decided had he been advised of his true exposure and had he been urged to take the best deal likely ever to be available to him. The Court cannot know with certainty whether the outcome would have been different absent advice that Petitioner faced only nine years and should wait for a better deal. In a *Strickland* analysis, however, the Court deals in probabilities, not certainties. *See United States v. Day,* 969 F.2d 39, 45 n. 8 (3rd Cir.1992) (*Strickland* "does not require certainty or even a preponderance of the evidence that the outcome would have been different with effective assistance of counsel; it requires only 'reasonable probability' that this is the case").

In addition to Petitioner's testimony that he would have taken the deal, the Court considers persuasive: (1) the immense disparity between nine years and life; and (2) the virtual indefensibility of Petitioner's case. The severity of the potential punishment, coupled with the near certainty of a guilty verdict, would have rendered most rational defendants amenable to the plea bargain offered. *See Wanatee v. Ault,* 39 F.Supp.2d 1164, 1175 (N.D.Iowa 1999) ("a determination of 'reasonable probability' that the petitioner would have accepted the plea requires consideration of 'the totality of the evidence'"; where evidence was such that the best a potential felony murder defendant could hope for at trial was a second degree murder verdict, fact that plea bargain would have limited exposure to that of a second degree murder conviction held relevant to the prejudice analysis); *United States v. Gordon,* 156 F.3d 376, 381 (2nd Cir.1998) ("the fact that there is a great disparity between the actual maximum sentencing exposure ... and the sentence exposure represented by defendant's attorney provides sufficient objective evidence to establish a reasonable probability that the outcome of the proceedings would differ") (quotations and brackets omitted).

The most persuasive evidence of what Petitioner probably would have done had he been advised properly, however, consists of what Petitioner *actually did* after he was advised properly: he attempted to recapture the lost plea opportunity. After Petitioner learned of his Three Strikes

---

gado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). It is uncertain whether this "independent review of the record" standard here applies. On a limited record, the Superior Court judge made a conclusory statement that the performance of Petitioner's counsel had been "adequate." The California Supreme Court denied Petitioner's subsequent habeas petition without opinion. The "independent review of the record" standard's applicability ultimately presents an academic question, however. The state court decisions do not pass muster under AEDPA review, whether or not this Court undertakes "independent review of the record."

exposure, he expressed, long before trial, in and out of court, his desire to accept the lapsed offer. This fact, along with all the other considerations discussed, compels a finding of prejudice. *See Mask v. McGinnis*, 233 F.3d 132, 141–42 (2d Cir.2000), *cert. denied*, —— U.S. ——, 122 S.Ct. 322, —— L.Ed.2d —— (2001) (large disparity between sentence exposure following trial and exposure under plea bargain, coupled with defendant's statements he would have accepted a reasonable offer, satisfied prejudice requirement); *see also United States v. Day*, 969 F.2d 39, 43, 45 (3rd Cir.1992) ("Knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty"; defendant's contention he would have accepted a five-year deal had he known he was facing 22 years rather than 11 years found not implausible: "we do not find it at all implausible that a young man would think twice before risking over 3,800 extra days in jail just to gain the chance of acquittal of a crime that he knew that he had committed").

To prove *Strickland* prejudice, some cases have required proof that the trial court would have approved the plea bargain in question. *See United States v. Day*, 969 F.2d 39, 46 (3rd Cir.1992). *United States v. Nguyen*, 997 F.Supp. 1281, 1290 (C.D.Cal.1998); *But see Mask v. McGinnis*, 233 F.3d at 142 ("nothing in the standards established by the Supreme Court in either *Strickland* or *Hill* require an evaluation of whether the court would have accepted a different plea agreement"); *Turner v. Tennessee*, 858 F.2d 1201, 1207 (6th Cir.1988), *vacated on other grounds*, 492 U.S. 902, 109 S.Ct. 3208, 106 L.Ed.2d 559 (1989) ("we do not believe that Turner was required to demonstrate a reasonable probability that the trial court would have approved the two-year plea arrangement"). The issue is academic in

the present case. If Petitioner bore the burden of proving a reasonable probability the Riverside Superior Court would have approved a plea based on the prosecution's plea offer, Petitioner has carried that burden. Petitioner's counsel testified that, based upon her experience with the judge in question, the plea would have been approved (E.R.T. 113; *see also* Exhibits F, G, H of "Exhibits in Support of Memorandum, etc.," filed April 21, 2000 (other attorneys with relevant experience expressed similar opinions)).

The fact that Petitioner apparently received a fair trial following loss of the plea opportunity does not redeem the *Strickland* prejudice.

"The prejudice inquiry in such cases 'focuses on whether counsel's constitutionally ineffective performance affected the outcome of the *plea process*.' [*Hill v. Lockhart*, 474 U.S. 52] at 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (emphasis added). Moreover, a large body of federal case law holds that a defendant who rejects a plea offer due to improper advice from counsel may show prejudice under *Strickland* even though he ultimately received a fair trial." *Wanatee v. Ault*, 259 F.3d 700, 703 (8th Cir.2001) (citing *Engelen v. United States*, 68 F.3d 238, 241 (8th Cir.1995) (collecting cases)); *accord United States v. Blaylock*, 20 F.3d 1458, 1466 (9th Cir.1994); *United States v. Day*, 969 F.2d 39, 44 (3rd Cir.1992).

Respondent argues under *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) ("*Lockhart*") that there exists no cognizable prejudice in the present case. The United States Supreme Court recently explained, however, "that our holding in *Lockhart* does not supplant the *Strickland* analysis." *Glover v. United States*, 531 U.S. 198, 203, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001) (citing *Williams v.*

*Taylor*, 529 U.S. 362, 393, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). *Lockhart* and its precursor *Nix v. Whiteside*, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986) ("*Nix*") "do not justify a departure from a straightforward application of *Strickland* when the ineffectiveness of counsel deprives the defendant of a substantive or procedural right to which the law entitles him." *Williams v. Taylor*, 529 U.S. 362, 393, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

In *Nix*, the Supreme Court held that a defendant could not base an ineffectiveness claim upon counsel's refusal to assist in presenting perjured testimony. Although the perjured testimony might have created a reasonable probability the jury would not have returned a guilty verdict, such prejudice was held not cognizable. In *Lockhart*, the Court held that a defendant could not base an ineffectiveness claim upon counsel's failure to make an invalid objection, even though the trial court erroneously would have sustained the objection. The *Lockhart* Court cited *Nix* in emphasizing that a defendant "has no entitlement to the luck of a lawless decisionmaker." *Lockhart*, 506 U.S. at 370, 113 S.Ct. 838 (citations and quotations omitted).

The present case is insufficiently similar to *Nix* or *Lockhart* to justify departure from the outcome determinative test for *Strickland* prejudice. Petitioner does not base his claim upon unethical conduct, a defrauded jury or a court's erroneous legal ruling. There was nothing unethical or illegal about the prosecution's initial charge of Petitioner's case as a one-strike case or the prosecution's plea offers of six and five years. Indeed, there is evidence in the record that the Riverside County District Attorney's Office sometimes unmistakenly charges and deals potential Three Strikes cases in this manner (E.R.T. 116; Exhibit A to Declaration of Judy Knutson). The fact that, in Petitioner's case, the prosecutor would have been less generous in her discretionary decisions had she appreciated the rule of *Campos* should not alter the prejudice analysis. The validity of an ineffective assistance of counsel claim should not depend upon the subjective motivation underlying a prosecutor's discretionary decisions.

Therefore, the Court finds Petitioner has demonstrated cognizable prejudice. To the extent the state courts failed so to find, their decisions constituted an "unreasonable application" of clearly established federal law, within the meaning of 28 U.S.C. section 2254(d).[10]

### III. *Remedy*

■ Remedies generally "should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *United States v. Morrison*, 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981). Like many rules, this rule is easy to state, but sometimes hard to apply. Application is particularly hard under the unusual circumstances of the present case.

■ When ineffective assistance of counsel has deprived a defendant of a favorable plea bargain, courts have not been consistent in the remedies afforded. Some courts vacate the conviction and return the parties to the plea bargaining stage, where the parties may negotiate, or decline to negotiate, as they see fit. *See, e.g., United States v. Gordon*, 156 F.3d 376, 381–82

---

10. Neither the Superior Court nor the California Supreme Court spoke directly to the issue of prejudice. It is uncertain whether these courts reached the prejudice prong of the analysis. The Superior Court appeared to base its ruling on the reasonableness prong; the Supreme Court did not explain its ruling.

(2nd Cir.1998) (upholding district court's discretion to order retrial); *People v. Curry*, 178 Ill.2d 509, 227 Ill.Dec. 395, 687 N.E.2d 877, 890–91 (1997) (new trial accompanied by resumption of plea bargaining process); *In re Alvernaz*, 2 Cal.4th 924, 942–44, 8 Cal.Rptr.2d 713, 724–26, 830 P.2d 747, 758–59 (1992) ("Most courts, in determining the remedy that should be afforded a defendant who establishes that he or she has been denied effective assistance of counsel with regard to an offered plea bargain, have vacated the judgment of conviction and remanded the case for a new trial"). Other courts force the prosecution to reinstate the lost plea offer. *See, e.g., Alvernaz v. Ratelle*, 831 F.Supp. 790, 797–99 (S.D.Cal.1993); *Williams v. State*, 326 Md. 367, 382–83, 605 A.2d 103, 110–11 (1992). Still other courts return the parties to the plea bargaining stage, but impose a rebuttable presumption of vindictiveness upon any prosecutorial refusal to reinstate the lost plea offer. *See, e.g., Turner v. Tennessee*, 940 F.2d 1000, 1001–02 (6th Cir.1991), *cert. denied*, 502 U.S. 1050, 112 S.Ct. 915, 116 L.Ed.2d 815 (1992).

Depending upon the circumstances, each of these remedies can be inadequate or unfair. Vacation of the conviction sometimes is unfair to the state. Such a remedy reverses the result of an entirely fair trial, sometimes in situations where the passage of time would make retrial difficult or impossible.[11] *See State v. Donald*, 198 Ariz. 406, 10 P.3d 1193, 1205 n. 7 (Ariz.App.2000), *cert. denied*, —— U.S.

——, 122 S.Ct. 63, —— L.Ed.2d —— (2001). Mere vacation of the conviction also sometimes is unfair to the petitioner. The remedy does not restore the lost plea opportunity of which the petitioner was deprived, although it may, as a practical matter, induce the prosecution to bargain anew.

Specific performance of the plea offer sometimes is a remedy undesired by the petitioner.[12] *See, e.g., United States v. Gordon*, 156 F.3d 376 (2d Cir.1998). On the other hand, specific performance also can invade unacceptably the province of the prosecution. "The Due Process Clause is not a code of ethics for prosecutors...." *Mabry v. Johnson*, 467 U.S. 504, 511, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984). Even a broken prosecutorial promise (which is not involved in the present case) does not always warrant specific performance as a remedy. *Id.* at 510 n. 11, 104 S.Ct. 2543. There exists no constitutional right to a plea bargain. *Id.* at 507, 104 S.Ct. 2543. The plea bargaining discretion of the prosecution, exercised in the interest of the public, ordinarily should remain relatively unfettered.[13] *See In re Alvernaz*, 2 Cal.4th 924, 943, 8 Cal.Rptr.2d 713, 725–26, 830 P.2d 747, 749–50 (1992) ("Given the changed complexion of the case after trial and conviction, the prosecutor should not be locked into the proposed pretrial disposition, appropriate as it may have been at the time").

The imposition of a presumption of vindictiveness would seem inappropriate

---

**11.** Respondent does not argue that the passage of time has created any proof problems in the prosecution's once overwhelming case. Indeed, Respondent submits that vacation of the conviction, not specific performance of the plea offer, would be the appropriate remedy herein (Answer at 31–32).

**12.** Petitioner urges specific performance in the present case, however.

**13.** Additionally, changes in circumstances sometimes can deprive the prosecution of the would-be benefit of its original plea offer, *e.g.*, when cooperation of the defendant would have been involved. *See United States v. Day*, 969 F.2d 39, 47 (3rd Cir.1992).

where, as here, the prosecution's unwillingness to reinstate a plea offer is demonstrably unrelated to the success of the defendant's post-conviction challenge. In the present case, of course, the prosecution's plea offer lapsed before Petitioner's preliminary hearing and the prosecution made a decision long before trial not to reinstate the offer. That decision obviously had nothing to do with trial-related or post-trial-related vindictiveness. *See United States v. Goodwin*, 457 U.S. 368, 383, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982) ("a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pre-trial decision"); *United States v. Blaylock*, 20 F.3d 1458, 1468–69 (9th Cir.1994) ("The government may of course, in proper cases, seek to demonstrate that intervening circumstances have so changed the factual premises of its original offer that, with just cause, it would have modified or withdrawn its offer prior to its expiration date").

As one court stated, with a hint of exasperation, "[t]here is no perfect remedy, yet there must nevertheless be some remedy." [14] *Kates v. United States*, 930 F.Supp. 189, 193 (E.D.Pa.1996); *see also McClenithan v. Dugger*, 767 F.Supp. 257, 260 (M.D.Fla.1991) ("In fact, no adequate remedy may have existed in this situation"). As previously discussed, a presumption of vindictiveness would be inappropriate under the circumstances of the present case. The Court also believes the forced restoration of the plea offer would be inappropriate. The one-strike charging

decision, and the plea offer itself, resulted from a prosecutor's temporary misunderstanding of California law. Even if Petitioner had accepted the offer, the prosecutor might have recognized her mistake prior to entry of the plea. The prosecution apparently did recognize the mistake by at least November 13, when it filed the Information. California law permits the prosecution to withdraw a plea offer even after the defendant's acceptance of the offer, in the absence of any detrimental reliance by the defendant. *See People v. Rhoden*, 75 Cal.App.4th 1346, 1353–55, 77 Cal.App.4th 512A, 89 Cal.Rptr.2d 819, 822–25 (2000). The Court cannot say that the possibility of such a post-acceptance withdrawal was sufficiently high to negate the existence of *Strickland* "prejudice." [15] The possibility nevertheless remains material to consideration of an appropriate remedy. *See United States v. Day*, 969 F.2d 39, 47 (3rd Cir.1992) (in fashioning an appropriate remedy, court may factor into its evaluation "any legitimate (nonvindictive) reasons why the prosecution may no longer favor the plea agreement"). It is one thing to say Petitioner was "prejudiced" by losing the opportunity to capitalize on the prosecution's momentary mistake; it seems quite another thing to force the prosecution to repeat that mistake many years later. *Cf. United States v. Blaylock*, 20 F.3d 1458, 1468–69 (9th Cir. 1994) (government may demonstrate that intervening circumstances have changed the premises of its original offer); *People v. Curry*, 178 Ill.2d 509, 535–36, 227 Ill. Dec. 395, 687 N.E.2d 877, 890 (1997) (re-

---

14. Although this Court believes it should mandate some specific remedy, at least one federal court has permitted the state trial court to select among the various remedies after a plea-related grant of habeas relief. *See Mayes v. Galley*, 858 F.Supp. 490, 497–98 (D.Md. 1994) (state trial court allowed to select reme-

dy for prosecution's unconstitutional breach of plea agreement).

15. Based on her experience with the prosecutor in question, Petitioner's counsel testified she believed the prosecutor would have honored even a mistaken offer (E.R.T.115).

fusing specific performance of an unexecuted plea bargain).[16]

The least inappropriate remedy, therefore, would appear to be the vacation of the conviction and the return of the parties to the pre-error stage. The parties then will be free to engage in plea bargaining or to decline to do so. Petitioner already has served several years of his now vacated sentence. In the public interest, the state may decide to plea bargain anew, rather than undertake the difficulty and expense of a retrial.[17]

### RECOMMENDATION

For all of the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) directing that Judgment be entered granting a conditional writ of habeas corpus.[18]

October 15, 2001.

### NOTICE

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number. No notice of appeal pursuant to the Federal Rules of Appellate Procedure

should be filed until entry of the judgment of the District Court.

---

**16.** For the same reasons, the Court rejects Petitioner's alternative suggestion to limit his prison term to nine years. Again, the charging of the case as a one-strike case having a nine year maximum was a "mistake" the prosecution should not be compelled to repeat.

**17.** Between the January evidentiary hearing and the September submission of documentary evidence, the parties attempted without

success to agree upon a plea disposition. The Court did not involve itself in these negotiations other than to stay its ruling pending the outcome of the negotiations.

**18.** Because of the Court's disposition of the ineffective assistance claim, the Court need not reach Petitioner's other claims. *See, e.g., United States v. Cortijo–Diaz,* 875 F.2d 13, 14 n. 1 (1st Cir.1989).