**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MICHAEL WAYNE RIGGS,
*Petitioner-Appellant,*

v.

J. W. FAIRMAN, JR., Warden,
*Respondent-Appellee.*

No. 02-55185

D.C. No.
CV-00-04266-
CBM(E)

OPINION

Appeal from the United States District Court
for the Central District of California
Consuelo B. Marshall, Chief Judge, Presiding

Argued January 5, 2004
Submitted March 16, 2004
Pasadena, California

Filed March 7, 2005

Before: Stephen S. Trott, Johnnie B. Rawlinson, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Rawlinson;
Dissent by Judge Bea

**COUNSEL**

Donald M. Falk, Mayer Brown Rowe & Maw, Palo Alto, California, for the appellant.

Kyle Niki Shaffer, Deputy Attorney General, San Diego, California, for the appellees.

**OPINION**

RAWLINSON, Circuit Judge:

Following a jury trial, California state prisoner Michael Wayne Riggs (Riggs) filed a habeas petition seeking to set aside his conviction on the basis that he was denied effective assistance of counsel during the plea bargaining stage of his criminal prosecution. The district court ruled that Riggs' attorney's failure to inform him that California's "three strikes" law might apply to his case constituted ineffective assistance of counsel. The district court vacated Riggs' conviction and sentence and ordered the parties to return to the pre-error negotiating stage. The court declined Riggs' request that the court order the government to resurrect its original plea offer. Because the remedy fashioned by the district court was within its discretionary bounds, we AFFIRM.

**I.**

***BACKGROUND***

Riggs was charged with petty theft in the Superior Court of

California. He had been convicted previously of four counts of robbery. Although Riggs' four robbery convictions arose from a single proceeding, each conviction constituted a separate "strike" under California's three strikes law.[1] *See People v. Campos*, 45 Cal.Rptr.2d 706, 709 (Cal.App. 1995). California's three strikes law imposes a 25-year-to-life sentence on defendants previously convicted of two or more "serious" or "violent" felonies. Cal. Penal Code §§ 667(e)(2)(A), 1170.12(c)(2)(A).

Before his preliminary hearing, Riggs, the deputy district attorney, and Riggs' defense counsel engaged in plea negotiations. None of the parties to the negotiations understood that Riggs faced a potential life prison term under California's three strikes law. The prosecutor was unaware that she could charge four "strikes" for four robbery charges tried in a single proceeding. Riggs' counsel had limited knowledge of Riggs' criminal history due to her failure to independently investigate Riggs' prior criminal record. Based on her limited knowledge, Riggs' counsel advised Riggs that his maximum exposure on the petty theft charge was only nine years. Riggs knew his own criminal history, but did not understand that California law permitted charging multiple counts arising in a single prior case as separate strikes.

During the course of plea negotiations, the state offered Riggs a deal that would permit him to plead guilty in return for a six-year sentence. This offer was later revised to include a five-year sentence. Riggs' counsel advised him that he could do better than the five-year offer and Riggs rejected the offer. However, no better deal was offered. Riggs was eventually convicted of felony petty theft and sentenced to 25-years-to-life in prison.

---

[1] Riggs' prior robbery convictions converted his otherwise misdemeanor petty theft offense into the felony of petty theft with a prior. *See* Cal. Penal Code § 666.

## II.

### *STANDARDS OF REVIEW*

We review *de novo* the district court's ruling on a writ of habeas corpus. *Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003). We review the district court's ruling on the appropriate remedy for abuse of discretion. *Nunes v. Mueller*, 350 F.3d 1045, 1056-57 (9th Cir. 2003).

## III.

### *DISCUSSION*

### A.   General Legal Standard

Because Riggs filed his habeas petition after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), his appeal is governed by the rules of that Act. *See Gill v. Ayers*, 342 F.3d 911, 917 (9th Cir. 2003). Under AEDPA, we may grant the petition only if the state court's denial of relief:

> (1) resulted in a decision that was either "contrary to," or was an "unreasonable application" of "clearly established federal law" as set forth by the United States Supreme Court; or

> (2) if that decision was based on an "unreasonable determination" of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1); *Tracey v. Palmateer*, 341 F.3d 1037, 1042 (9th Cir. 2003).

**[1]** To succeed on his ineffective assistance of counsel claim, Riggs must show both that his counsel's performance was constitutionally deficient and that he was prejudiced by

his counsel's errors. *Strickland v. Washington,* 466 U.S. 668, 687 (1984).[2] To warrant relief under *Strickland*, defense counsel's performance must have fallen below an "objective standard of reasonableness." *Id.* at 688. Riggs must show a "reasonable probability" that, but for his counsel's ineffectiveness, the result of his proceedings would have differed. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The Supreme Court's two-part standard for analyzing claims of ineffective assistance of counsel was clearly established law as of the time of the plea negotiations.[3]

In a habeas appeal, we review the last reasoned decision in the state court system. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). In this case, Riggs filed a direct appeal of his conviction. The California Court of Appeal affirmed the judgment of conviction. However, the direct appeal did not include the ineffective assistance of counsel claim now before us. Riggs subsequently filed a habeas petition in the California Supreme Court asserting, among other causes, an ineffective assistance of counsel claim.

The California Supreme Court summarily denied Riggs' habeas petition. Ordinarily, we look through the California Supreme Court's summary denial of the ineffective assistance claim to the last reasoned state court decision that did address the claim. *See Bailey v. Rae*, 339 F.3d 1107, 1112 (9th Cir. 2003). However, the only other state court decision addressing Riggs' conviction was the Court of Appeal decision rejecting Riggs' direct appeal. As noted above, the direct

---

[2] "It is past question that the rule set forth in *Strickland* qualifies as clearly established Federal law, as determined by the Supreme Court of the United States." *Williams v. Taylor*, 529 U.S. 362, 391 (2000) (internal quotation marks omitted).

[3] It is also clear that the *Strickland* analysis applies to claims of ineffective assistance of counsel involving counsel's advice offered during the plea bargain process. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

appeal did not raise the ineffective assistance of counsel claim. As a result, there is no state court determination addressing Riggs' ineffective assistance of counsel claim. In such a circumstance, we undertake an "independent review of the record." *See Greene v. Lambert*, 288 F.3d 1081, 1089 (9th Cir. 2002).

## B. *Deficient performance*

**[2]** The performance prong of the ineffective assistance of counsel analysis turns on whether Riggs' attorney's failure to learn that Riggs was exposed to a potential 25-year-to-life sentence fell below an objective standard of reasonableness. Defense "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691. The investigatory omissions made by Riggs' attorney were numerous. Among the most egregious omissions were counsel's failure to investigate Riggs' prior robbery convictions, failure to obtain Riggs' rap sheet, and failure to seek sufficient information from Riggs about his prior robbery convictions.

**[3]** Informed only by her limited knowledge of his criminal record, Riggs' counsel advised him that his maximum exposure under California law was only nine years and that he should therefore reject the state's offer of a five-year prison term. However, Riggs' actual exposure under California's three strikes law was 25-years-to-life. Defense counsel's advice to Riggs was not only erroneous, but egregious, considering the discrepancy between the two punishments. *See Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986) ("Though a mere inaccurate prediction, standing alone, would not constitute ineffective assistance, the gross mischaracterization of the likely outcome presented in this case, combined with the erroneous advice on the possible effects of going to trial, falls below the level of competence required of defense attorneys.") (citations omitted).

**[4]** Simply stated, Riggs' counsel had a duty to investigate whether California's three strikes law would be applicable to Riggs. Riggs' counsel unjustifiably failed to discover such information in this case. Her omission fell below an objective standard of reasonableness. *See Iaea*, 800 F.2d at 865.

## C. *Prejudice*

Riggs must also "affirmatively prove prejudice," *Strickland*, 466 U.S. at 693, by demonstrating "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. This burden represents a fairly low threshold. *See Sanders v. Ratelle*, 21 F.3d 1446, 1461 (9th Cir. 1994) (stating that a "reasonable probability" is actually a lower standard than preponderance of the evidence). Riggs has sufficiently demonstrated that counsel's ineffectiveness prejudiced him. Riggs credibly testified that he would have accepted the five-year plea sentence offered by the prosecution if he had known that his maximum exposure was a sentence of 25-years-to-life. The significant discrepancy between a sentence of five years and a sentence of 25-years-to-life supports Riggs' testimony. Such a discrepancy between the two sentences would compel any reasonable person to take the deal offered by the prosecution. In addition, the record indicates that the state's case against Riggs was strong. Therefore, it does not stretch credulity to conclude that Riggs would have preferred a certain five-year prison term to a trial with the possibility of a sentence of 25-years-to-life if convicted.

**[5]** The record also indicates that once Riggs became aware of the application of the three strikes law to his case, he attempted to get the sentencing offer reinstated. Despite Riggs' efforts, the prosecution declined to reinstate the offer. Riggs' testimony and actions, along with the large disparity between the respective sentences persuades us that there is a "reasonable probability" that the outcome of the criminal proceeding against Riggs would have differed had he received

competent legal advice. *See Mask v. McGinnis*, 233 F.3d 132, 142 (2d Cir. 2000) (holding that the prejudice requirement was satisfied when defendant stated his willingness to accept a reasonable plea bargain and a great disparity existed between the sentence exposure at trial and in the plea bargain). We agree with the district court that Riggs has shown prejudice.

## D.   *Remedy For Ineffective Assistance of Counsel*

Upon concluding that Riggs was denied effective assistance of counsel, the district court vacated Riggs' jury conviction and three-strikes sentence for petty theft with a prior. The district court ordered the parties to return to the pre-error stage of the criminal proceeding. The district court determined that the appropriate pre-error stage of the criminal proceeding was the plea bargain stage. Despite Riggs' urging, the district court declined to order the government to reinstate the five-year plea offer. Riggs argues on appeal that specific performance of the state's five-year plea offer is the only appropriate remedy in this case.

**[6]** Once a determination has been made that habeas relief is warranted, the district court has considerable discretion in fashioning a remedy "tailored to the injury suffered from the constitutional violation . . ." *United States v. Morrison*, 449 U.S. 361, 364 (1981). The Supreme Court has instructed that "[f]ederal habeas corpus practice, as reflected by the decisions of this Court, indicates that a court has broad discretion in conditioning a judgment granting habeas relief. Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require.' " *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (internal quotation marks omitted). Therefore, unless the district court abused its discretion in fashioning a remedy, that remedy must stand. *Nunes*, 350 F.3d 1056-57.

**[7]** When ineffective assistance of counsel has deprived a defendant of a plea bargain, a court may choose to vacate the conviction and return the parties to the plea bargaining stage. *See United States v. Gordon*, 156 F.3d 376, 381-82 (2d Cir. 1998). A court may also order the government to reinstate its original plea offer to the defendant or release the defendant within a reasonable amount of time. *See Nunes,* 350 F.3d at 1056-57 (9th Cir. 2003).[4] In deciding the proper remedy, a court must consider the unique facts and circumstances of the particular case. *See Morrison*, 449 U.S. at 364.

**[8]** As the district court noted, neither of the options described above offers a perfect solution. *Riggs v. Fairman*, 178 F.Supp.2d 1141, 1152-53 (C.D. Cal. 2001). If the prosecution were ordered to reinstate its original plea offer to Riggs, the government would be forced to repeat the same mistake it made years ago. On the other hand, returning the parties to the negotiation stage does not restore the lost plea opportunity. Weighing both of these considerations, the district court held that "[t]he least inappropriate remedy, therefore, would appear to be the vacation of the conviction and the return of the parties to the pre-error stage." *Id.* at 1154. The district court aptly noted that as a matter of policy, requiring the government to re-offer Riggs the five-year deal is troubling in light of the fact that under California law, plea bargains are not binding on the parties until "a defendant pleads guilty or otherwise detrimentally relies on that bargain." *People v. Rhoden*, 75 Cal.App.4th 1346, 1354 (1999). Therefore, even if Riggs had accepted the five-year plea offer, the government may have realized its mistake prior to the court's acceptance of the plea agreement. Upon realizing its

---

[4]We note that in *Nunes*, we were called upon to decide whether the district court abused its discretion when it ordered specific performance of the original plea offer. The fact that we affirmed the remedy fashioned by the district court in that case reinforces the discretion that lies with the district court, and does not suggest that a particular remedy is mandated in any given case.

mistake, the government would have had the right to unilaterally invalidate the plea agreement. Because the district court properly considered the effect of California law and weighed the competing considerations raised by the parties, we cannot say that the district court abused its discretion in returning the parties to the plea bargain stage of the proceedings.

## IV.

### *CONCLUSION*

[9] We find no abuse of discretion by the district court in fashioning the remedy in this case. It is undisputed that the plea offer to Riggs was a result of a misunderstanding of California's three strikes law by all involved. Absent the fundamental misunderstanding that pervaded the plea negotiations, Riggs never would have been offered a five-year plea sentence. Riggs missed the opportunity to exploit the government's misstep and seize a plea offer that never should have been extended to him. Under such circumstances, we cannot conclude that the remedy of specific performance of the government's plea offer was the only appropriate remedy.

**AFFIRMED**.

---

BEA, Circuit Judge, dissenting:

I respectfully dissent from part III.D. of the majority's opinion because it is well-established law that in fashioning a remedy for ineffective assistance of counsel, this court must put Riggs back in the position he would have been in had he received effective assistance of counsel. *Kimmelman v. Morrison*, 477 U.S. 365, 379 (1986); *Nunes v. Mueller*, 350 F.3d 1045 (9th Cir. 2003); *United States v. Blaylock,* 20 F.3d 1458, 1468 (9th Cir. 1994).[1] The majority's remedy fails to do so.

---

[1]The sole issue raised on appeal is the remedy fashioned by the district court. The state did not cross-appeal the district court's ruling that Riggs

What Riggs has won is a "famous victory":[2] He has won his writ of habeas corpus; everyone agrees he received ineffective assistance of counsel and that had he received competent counsel he would have accepted the prosecution's five-year offer; and, having already served seven years in prison, today he would be a free man. But regardless Riggs' success in winning his writ, the majority's remedy will put him right back in the same place he was before he won his writ: serving a mandatory sentence of 25 years to life.

With respect, this result is based on erroneous factual assumptions and on misguided legal reasoning.

First, without any evidentiary support, the majority opinion assumes that had the prosecutor correctly read the law, she would not have persisted in the five-year offer. This assumption is belied by the district court's finding that Riggs was actually prejudiced by the ineffective assistance of counsel; that had he received competent counsel the outcome would have been different. Such a finding necessarily implies the district attorney would *not* have withdrawn her five-year offer. If the district court had found the prosecutor would have withdrawn the five-year offer, Riggs could not be found to have been prejudiced by his ineffective attorney.

---

had ineffective assistance of counsel at the plea bargaining stage. Therefore, I shall not comment on the majority's opinion which precedes part III.D. While it is informative and accurate, such earlier portion of the opinion is background, rather than determinative.

[2] "And everybody praised the Duke
  Who this great fight did win."
  "But what good came of it at last?"
  Quoth little Peterkin.
  "Why, that I cannot tell," said he,
  "But 'twas a famous victory."

Robert Southey, *The Battle of Blenheim*, in HISTORICAL POEMS AND BALLADS, (Rupert S. Holland, ed., George W. Jacobs & Co) (1912).

Second, the two reasons given by the majority opinion for departing from the traditional remedy of reinstating the plea offer are mistaken interpretations of criminal and constitutional law. Our precedent is clear that a prosecutor cannot withdraw a plea bargain offer on remand where the accused had ineffective assistance of counsel at the time the offer was tendered and refused. Neither is the prosecutor entitled to have any errors of its own erased by a Sixth Amendment which grants rights only to the accused.

I

To say the case against Riggs was strong is an understatement. On October 13, 1995, Riggs shoplifted a bottle of vitamins in what the district court described as "a petty theft motivated by homelessness and hunger." *Riggs v. Fairman*, 178 F. Supp. 2d 1141, 1143 (C.D. Cal. 2001). When caught, Riggs "apologized emphatically" and told the store employees that if they would give him a job "he'd scrub floors or clean the place" to pay for the vitamins. *Id*. at 1143-45.

Riggs was charged with petty theft. Had this been Riggs' first offense, it would have been a misdemeanor with a maximum sentence of six months, or a fine. CAL. PENAL CODE § 490. However, Riggs had previously been convicted of four counts of robbery in 1988. At first, one might think the previous conviction would turn this misdemeanor offense into a felony. *See* CAL. PENAL CODE § 666. As a "second strike", the prosecution said it could increase Riggs' possible penalty to nine years. But under California's three strikes law, even though Riggs' conviction for four counts of robbery were charged in a single complaint, *each* count constituted a separate "strike." *See* CAL. PENAL CODE §§ 667; *People v. Fuhrman*, 941 P.2d 1189, 1195-96 (1997). Thus, Riggs' previous conviction turned this petty theft into his "third strike" with a mandatory sentence of 25 years to life.

As the district court found, the "evidence of Petitioner's guilt was overwhelming." His theft had been seen by multiple

witnesses, to whom he had confessed to the crime. *Riggs*, 178 F. Supp. 2d at 1143, 1149. At trial, defense counsel did not even present a closing argument. If remanded for a new trial, there is absolutely no reason to think Riggs will not be convicted again and receive another mandatory sentence of 25 years to life, especially since the parties have been unable to agree to a disposition during mediation.

## II

A.  The Remedy Required by Law Is to Allow Riggs to Remain Free Because He Has Served More Time Than He Would Have Under the Plea Offer

The issue we decide today is whether the district court's remedy places Riggs in the position in which he would have been, had he received effective assistance of counsel during plea negotiations. The clear answer is "No."

A defendant's right to effective assistance of counsel is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. *Kimmelman v. Morrison*, 477 U.S. 365, 379 (1986); *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963).

We have articulated the remedy for ineffective assistance of counsel during the plea bargaining stage as follows:

> Since the remedy for counsel's ineffective assistance should put the defendant back in the position he would have been in if the Sixth Amendment violation had not occurred, in certain circumstances granting a new trial may not be the appropriate remedy. . . . Thus, where, as here, the defendant was deprived of the opportunity to accept a plea offer, *putting him in the position he was in prior to the Sixth Amendment violation normally will involve reinstating the original offer.*

*United States v. Blaylock,* 20 F.3d 1458, 1468 (9th Cir. 1994) (emphasis added).

Blaylock was convicted of being a felon in possession of a firearm. He filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence; his motion was denied. He appealed both his conviction and the denial of his Section 2255 motion, and the appeals were consolidated. He argued, in relevant part, that he had ineffective assistance of counsel at the plea bargaining stage.

Blaylock claimed his attorney did not tell him about a plea offer until after it expired and that had he known about the offer in time, he would have accepted it. *Id.* at 1467. We held it was an abuse of discretion to deny Blaylock an evidentiary hearing on his claim of ineffective assistance of counsel; that if Blaylock proved on remand he would have accepted the plea offer, the correct remedy would be to reinstate the plea offer, not to give him a new trial. *Id.* at 1465, 1468-69.

There is only one recognized exception to *Blaylock's* general rule that a plea offer should be reinstated where there is ineffective assistance of counsel at the plea bargaining stage: "The government may of course, in proper cases, seek to demonstrate that intervening circumstances have so changed the *factual* premises of its original offer that, with just cause, it would have modified or withdrawn its offer prior to its expiration date." *Blaylock*, 20 F.3d at 1468-69 (emphasis added). The burden to prove such changed *factual* premises rests on the prosecution. *Id. Blaylock* does not say a change in the state's understanding of the law permits the state to withdraw its plea offer retroactively.

There were no changes in the facts in our case. The prosecution presented absolutely no evidence of changed factual circumstances after the plea offer—such as a defendant refusing to cooperate after agreeing to testify against a co-defendant, the defendant attacking a prison guard, or the dis-

covery of new evidence in the case. Even assuming changes in the facts, the state has not presented any evidence it would have withdrawn the offer prior to the original expiration date had it known Riggs could have been charged under the three strikes law.

As noted, the district court found Riggs would have taken the five-year plea offer if he had received effective assistance of counsel, *Riggs*, 178 F. Supp. 2d at 1149, and that finding has not been appealed. Thus, as the district court itself acknowledged, its remedy of remanding for a new trial "does not restore the lost plea opportunity of which petitioner was deprived." *Id.* at 1152. Rather, the district court's remedy returns the parties to the point in time before the offer had been made, not the *status quo* when the ineffective assistance of counsel to Riggs occurred—when the offer was open.[3] As the district court stated, "The Court also believes the forced restoration of the plea offer would be inappropriate. The one-strike charging decision, and the plea offer, resulted from a prosecutor's temporary misunderstanding of California law."[4] *Riggs*, 178 F. Supp. 2d at 1153. In short, by returning the case to a point before the prosecutor had committed a "mistake", the district court incorrectly sought to protect the state from its own ineffective counsel, rather than focus solely on the text and purpose of the Sixth Amendment—protecting the right to effective counsel of the person *accused* of a crime.

---

[3]Although the district court's decision states that it is returning the parties to the pre-error stage of the proceedings and the parties will be free to negotiate a plea bargain or not, the parties have been unable to negotiate a settlement in the district court or this court, and are unlikely to do so upon remand. The prosecution knows it can obtain a conviction, the prosecution's office has a policy of not negotiating Third Strike cases after the preliminary hearing, and Riggs has nothing with which to bargain. Therefore, in reality, the parties will find themselves back in the position they were in *after* the offer had expired and the Information had been amended, rather than at the time the offer was made.

[4]*See* pages 2806-2808, *infra*, for a discussion of why there is no *evidence* the prosecutor was operating under a "misunderstanding", but there is much evidence of no misunderstanding at all.

Our case is also similar to *Nunes v. Mueller*, 350 F.3d 1045 (9th Cir. 2003). In *Nunes*, the prosecutor offered a plea bargain of 11 years, with credit for time actually served, if Nunes would plead guilty to voluntary manslaughter. *Id*. Defense counsel incorrectly told Nunes the offer was for 22 years, not 11. *Id*. Nunes testified he asked his attorney to clarify the offer, but defense counsel simply rejected the offer. *Id*. Nunes was convicted of second degree murder and sentenced to 25 years to life, with a two-year enhancement.

The California Court of Appeal rejected Nunes' claim that he had ineffective assistance of counsel in the plea bargaining stage, holding he had not made out a prima facie claim he would have accepted the plea bargain but for counsel's deficient performance. *Id*. at 1050.

Nunes then filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in federal court. The district court held an evidentiary hearing and concluded Nunes did have ineffective assistance of counsel during the plea bargaining stage and he would have pleaded guilty to accept the 11-year offer. The court vacated Nunes' conviction and ordered the state to reinstate its 11-year plea offer. *Id*.

On appeal, we affirmed the district court's grant of the habeas writ, and remanded with instructions for the district court to "modify the writ to order Nunes' release (that is, after all, the classic relief afforded by the writ) within a reasonable time unless the state provides the identical offer it made to Nunes earlier." *Id*. at 1056.

The remedy we ordered on remand would obviously have been meaningless if the state could revoke its offer after remand. Necessarily implied in our remand order was the condition that had the state chosen to offer Nunes the identical offer, it would have had to leave that offer open long enough for Nunes to accept it by pleading guilty. Otherwise, the remedy would not have put Nunes "back in the position he would

have been in if the Sixth Amendment violation had never occurred," which we stressed we must do. *Id*. at 1057.

Puzzlingly, the state relies on *In re Alvernaz*, 830 P.2d 747 (1992), for the proposition that it should not be forced to reinstate its plea offer. But in *Alvernaz*, the district court disagreed with such a ruling by the state court, granted a habeas writ, and specifically held that a new trial would be an empty remedy and would deprive the defendant of the opportunity to accept the plea which he would have taken absent the improper advice of counsel. *See Alvernaz v. Ratelle*, 831 F. Supp. 790, 791, 797-98 (S.D. Cal. 1993). Therefore, Alvernaz was entitled to be released unless the plea offer was reinstated. *Id*.

*Blaylock* was a federal case brought under 28 U.S.C. § 2255, whereas Riggs is a state prisoner, bringing an action under 28 U.S.C. § 2254. Nevertheless, *Blaylock* was simply applying clear federal constitutional law as articulated by the Supreme Court. We are called to do the same here.

Although *Kimmelman* did not involve a plea bargain, it did involve ineffective assistance of counsel at the pre-trial stage. Counsel had failed to file a motion to suppress within the time allowed under state law. As a result, evidence the defendant objected to on grounds of illegal search and seizure was introduced at trial. The Supreme Court held that, although under New Jersey law the lack of a timely motion to suppress allowed the evidence to be admitted, Kimmelman's constitutional right to effective assistance of counsel was violated by his counsel's failure to move to suppress; the right to effective counsel prevailed over any New Jersey law that interfered with that right. *Kimmelman*, 477 U.S. at 379. After all, the application of federal constitutional law (which is exactly what 28 U.S.C. § 2254 is all about) cannot be subordinated to state law concepts. This principle applies even if, as here, those concepts happen to be precisely the same; a criminal defendant is entitled to effective assistance of counsel under

California law as well. *People v. Bautista*, 115 Cal. App. 4th 229, 237-42 (2004).

The Court in *Kimmelman* went on to explain that where the right to effective assistance of counsel conflicts with a principle of state law, "the Constitution constrains our ability to allocate as we see fit the costs of ineffective assistance. The Sixth Amendment mandates that the State bear the risk of constitutionally deficient assistance of counsel", not the criminal defendant. *Kimmelman*, 477 U.S. at 379. The only remedy which could cure the constitutional error was to return the accused to the point in the criminal proceeding when the ineffective assistance of counsel caused the prejudicial error in violation of constitutional rights.

*Blaylock* and *Nunes* were simply applying these principles of federal constitutional law enunciated in *Kimmelman* to develop the correct remedy for ineffective assistance of counsel at the plea bargaining stage.[5] As the Supreme Court has explained, "rules of law may be sufficiently clear for habeas purposes even when they are expressed in terms of a generalized standard rather than as a bright-line rule." *Williams v. Taylor*, 529 U.S. 362, 382 (2000); *see also Robinson v. Ignacio*, 360 F.3d 1044, 1057 (9th Cir. 2004) (holding that "Ninth Circuit precedent may be persuasive authority for purposes of determining whether a particular state court decision is an unreasonable application of Supreme Court law, and may also help us determine what law is clearly established.") (citation and quotation marks omitted). The "generalized standards" in *Kimmelman* were (1) where a state law conflicts with the constitutional right to effective assistance of counsel, the defendant's rights prevail and (2) where ineffective assistance of counsel is so grave as to effect a deprivation of counsel, in violation of the Sixth Amendment, the state should bear the

---

[5]If more were thought needed, *Nunes was* a California state case, brought under 28 U.S.C. § 2254 after the enactment of AEDPA.

burden of the ineffectiveness of counsel rather than the defendant.

Further, this is not the typical section 2254 case. We are not here called upon to review a state court's decision. The only decision being appealed is the federal district court's remedy. The district court's decision that Riggs is entitled to a grant of habeas corpus for ineffective assistance of counsel, which did differ from the state court's denial of his petition for writ of habeas corpus, *has not been cross-appealed by the state*. Thus, the traditional limitations of review of a state court decision under 28 U.S.C. § 2254(d) do not apply to this case because we are not reviewing a state court decision at all, much less the "last reasoned decision"[6] of the state courts.[7]

In light of this precedent, the majority's citation to *United States v. Gordon*, 156 F.3d 376 (2d Cir. 1998), is unpersuasive. It is a decision from the Second Circuit and, therefore, is not binding on us. Additionally, the Second Circuit makes a crucial distinction between cases where a relatively short time has lapsed, since the defendant's trial, and cases where a great deal of time has lapsed and the defendant has already served more time than he would have served under the plea offer. We have not as yet recognized this as a factor in fashioning the correct remedy, but it is one worth thinking about. In cases where, as here, the defendant has served more time than he would have under the original plea bargain, the Second Circuit itself has found that the correct remedy is to release the prisoner. *Boria v. Keane*, 99 F.3d 492, *clarified on reh'g*, 90 F.3d 36 (2d Cir. 1996).

Riggs has been out of prison on bail since the district court's decision in 2001—after serving seven years in prison.

---

[6] *See Ylst v. Nunnemaker,* 501 U.S. 797 (1991).

[7] The state court ruling on Riggs' petition for writ of habeas corpus raising ineffective assistance of counsel consisted of one sentence: "Petition for writ of habeas corpus is DENIED."

Having already served two years longer than the original five-year plea bargain, Riggs should be allowed to remain a free man. We have granted a writ of habeas corpus and ordered a defendant's immediate release in a similar case where the defendant had already served more time than she would have under the terms of her plea agreement. *See Brown v. Poole*, 337 F.3d 1155, 1160, 1162 (9th Cir. 2003).[8]

B.   There Is No Evidence the Prosecution Would Have
     Withdrawn Its Offer Before Riggs Could Plead Guilty

We review the district court's decision to grant a 28 U.S.C. § 2254 habeas petition *de novo* as we do issues of law, including the proper application of the law to the facts. *Nunes*, 350 F.3d at 1051. We review the district court's finding that the prosecutor might have withdrawn her five-year plea offer before Riggs could plead guilty for clear error.[9] *Id.* Where there is a total lack of evidence to support a factual finding, and substantial evidence to contradict it, such a finding constitutes clear error. *Id.*

To support the district court's finding the prosecutor might have withdrawn her five-year plea offer had she realized she could charge the prior felonies as four "strikes", the majority opinion requires us to assume: (1) the prosecutor made a mistake in her plea offer; and (2) absent that mistake, the prosecutor would have revoked or withdrawn her offer. Neither of

---

[8]In *Brown*, a state prisoner pleaded guilty to second degree murder. The state courts and the federal district court all denied her habeas petitions seeking to enforce an oral plea agreement. We reversed and granted the writ ordering her immediate release, holding that a prisoner whose oral plea agreement called for her to be released in seven-and-a-half years if she did not incur any disciplinary infractions was entitled to specific enforcement, even though she would ordinarily not be eligible for parole for ten years under the law.

[9]The district court found there was a "possibility of such a post-acceptance withdrawal" of the five-year plea offer. *Riggs*, 178 F. Supp. 2d at 1153.

these conclusions have support in the record. In fact, the evidence supports the opposite inference: the prosecutor knew, at all relevant times, of Riggs' vulnerability to the three strikes sentencing and, regardless, left the plea offer open until the preliminary hearing. Let us consider the evidence.

As to whether the offer was a mistake, the record contains several pieces of evidence that point to the conclusion the five-year offer was *not* the product of a mistake.

For example, although the defense attorney was not aware of the details of Riggs' past criminal history, the prosecutor was. *Riggs*, 178 F. Supp. 2d at 1144. The prosecutor charged Riggs' 1988 conviction in the original Complaint, filed on October 16, 1995, 12 days after the publication of *People v. Campos*, which made it clear the prosecutor could charge each count on which a conviction had been obtained as a separate "strike."[10]

Further, uncontradicted evidence was presented that *this* prosecutor's office routinely made five- or six-year plea offers in about fifty percent of the three strikes cases involving petty theft-with-a-prior; that the offers made before the preliminary hearing were typically the best offers made to defendants; and that the prosecutor would have honored even a mistaken offer under these circumstances. 178 F. Supp. 2d at 1153 n.15. By contrast, when a defendant rejected an offer, the policy of the prosecutor's office was "3rd Strikes cases that have reached Superior Court [*i.e.*, after a preliminary hearing results in an

---

[10] 47 Cal. App. 4th 1366, 1372, 45 Cal. Rptr. 2d 706 (1995). The *Campos* decision was binding law in California at the time it came down. 178 F. Supp. 2d at 1143 n. 4. Although the California Supreme Court later granted review in *Campos*, *see* 908 P.2d 422 (1995), that court later adopted the rule set forth in *Campos* in *People v. Fuhrman*, 941 P.2d 1189 (1997). Let us remember: there was *one* conviction on *four* counts. The prosecutor's mistake was not as to the fact of conviction or the fact of four counts. The mistake, if there was one, was only as to whether each count could count as a strike under the three strikes law. CAL. PENAL CODE § 667.

order that defendant be bound over for trial in the Superior Court] will NOT be negotiated."

This appears to be exactly what happened in Riggs' case. The prosecutor made him an offer and, once it was rejected, the prosecutor refused to negotiate further. The most telling evidence is the prosecutor's own notes, which indicate that she made him a five-year offer knowing about his prior conviction. It was only after Riggs rejected the offer that the prosecutor amended the Information to charge him with a violation of the three strikes law:

> I offered Mr. Riggs mid term times two years for four years in state prison, plus one year for a prison prior for five years as my final offer. (My original offer had been upper term [ ] times two for six years.) . . . I recommend filing the information as is [charging Riggs with three strikes], and basically giving this guy every conceivable moment of the time that he so richly deserves on his next trip to state prison.

Nothing had happened between the time the prosecutor made the offer and the time these notes were made, other than Riggs' rejection of the offer. Riggs did not commit any new offenses. It is undisputed that the prosecution knew Riggs' past criminal history at all times. Therefore, particularly in light of the office's policies and the prosecutor's notes, the most likely explanation for the withdrawal of the offer here is not the prosecutor's realization she made an error, but vindictiveness.[11]

---

[11]For some unexplained reason, the district court assumed that a prosecutor could act out of vindictiveness only at trial and beyond. This is not true. A prosecutor is like any other human being, and can act out of vindictiveness in her willingness to plea bargain or not. *See Turner v. Tennessee*, 940 F.2d 1000, 1001-02 (6th Cir. 1991), *vacated on other grounds*, 492 U.S. 902 (1989), *reinstated in pertinent part*, 940 F.2d 1000 (6th Cir. 1991) (where a defendant's conviction was overturned on a habeas petition for ineffective assistance of counsel in advising the defendant to reject a two-year plea bargain, the prosecution would be presumed to have acted with vindictiveness if it failed to reinstate the original offer on remand).

Perhaps a more charitable explanation than prosecutorial vindictiveness for the five-year offer remaining open only until the preliminary hearing is mere bureaucratic inertia. We have seen the district attorney's office had adopted a policy of refusing to plea bargain on three strikes cases once the defendant was bound over for trial, at the preliminary hearing. The prosecutor's office may have offered plea bargains in an effort to avoid expending resources on preparing for the preliminary hearing in petty theft cases. This could well have motivated the prosecutor's office policy of leaving offers open, no matter their potential for charging three strike enhancements, until the preliminary hearing, but not afterwards, when the efforts and resources had been spent.

Riggs could have entered his guilty plea at any time before the preliminary hearing upon an informally noticed motion for a change of plea, or at the arraignment. The district court found Riggs would have accepted the plea offer by pleading guilty; that is, of course, if he had received effective assistance of counsel. That finding has not been appealed.

Finally, the record also belies the conclusion that the prosecutor would have withdrawn her offer once she realized her mistake, if in fact she made a mistake at all. As noted, the case making it clear that the prosecutor could charge the prior offenses as separate strikes, *People v. Campos*, was published on October 4, 1995, 12 days *before* the original Complaint was filed on October 16, 1995, and 26 days before the preliminary hearing on October 30, 1995. Under California law, attorneys are charged with knowledge of the law. *See In re Marriage of Liu*, 242 Cal. Rptr. 649, 656 (Cal. App. 1987). Although *Campos* made it clear the prosecution could charge Riggs' prior convictions as separate strikes, the prosecution filed a Complaint which did not allege four prior "serious or violent" crimes (robberies); it then proceeded to leave open the five-year offer open until the preliminary hearing.

When making the five-year offer, the prosecutor did not even seek the nine-year maximum term she could get based

on the charge in the Complaint being a "second strike", even had Riggs not qualified for the three strikes law.

In spite of all this evidence, the majority's opinion seems to rely upon the logical fallacy *post hoc, ergo procter hoc* to conclude that because the Information was amended to charge Riggs with a violation of the three strikes law after *Campos* came down, it must have been the *Campos* decision that made the prosecutor "realize" she could charge Riggs with a violation of the three strikes law in the Information. But, as shown above, there is no evidence that the prosecutor ever made a mistake at all, and furthermore, *Campos* was published *before* the five-year offer was made.

Thus, the evidence in the record actually compels the conclusions that the prosecution knew Riggs' prior criminal history and was charged with knowledge that it could charge Riggs with three strikes. Nevertheless, consistent with the policy of the prosecutor's office, the prosecutor intentionally offered Riggs a plea of five years.

C.  The Prosecution Is Not Entitled to Relief from
    Ineffective Assistance of Counsel Under the Sixth
    Amendment

Even if the prosecution had made a mistake of law in offering the five-year plea offer, there is no basis for returning the state to a "pre-error stage" as does the majority opinion.

The Sixth Amendment does not protect the state from ineffective assistance of counsel, it protects only the criminal defendant:

> In all criminal prosecutions, *the accused* shall enjoy
> the right . . . to have the Assistance of Counsel for
> his defense.

U.S. CONST. amend VI (emphasis added). "No court, however, has ever held that the Sixth Amendment protects the rights of

anyone other than criminal defendants." *Portman v. County of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993).

Indeed, once a habeas petitioner prevails on a claim of ineffective assistance of counsel, the state bears the risk of constitutionally deficient counsel. *Kimmelman*, 477 U.S. at 379. The state has no remedy for its own ineffective assistance of counsel, and must bear the risk of ineffective assistance of defense counsel. Therefore, "even if one might perceive that the government's competing interest might be infringed by requiring that the original offer be reinstated, a contrary result would impermissibly shift the risk of ineffective assistance of counsel from the government to [the defendant]." *Blaylock*, 20 F.3d at 1469.

The majority opinion holds that the remedy fashioned by the district court was within the district court's discretion. As a general principle, trial courts usually do have broad discretion to fashion remedies. But not where the law mandates that the remedy effect a specific result. *Blaylock* mandates that the remedy "should put the defendant back in the position he would have been in if the Sixth Amendment violation had not occurred." 20 F.3d at 1468. The district court's remedy does not effect this result. Whatever discretion a trial court has to fashion remedies, it is not unchecked. A remedy that does not correct the constitutional violation *is* an abuse of discretion. *Hoptowit v. Ray*, 682 F.2d 1237, 1245-46 (9th Cir. 1982).

D.   The United States Constitution Limits California Law Permitting the Prosecutor to Withdraw a Plea Offer at Any Time

The majority's conclusion also depends on *People v. Rhoden*, 75 Cal. App. 4th 1346, 1354 (1999). In *Rhoden*, the prosecutor made Rhoden a plea offer one morning during trial. The defendant promised to plead guilty. The parties signed an agreement to this effect. But when the trial reconvened later that afternoon, and before the defendant could plead guilty,

the prosecutor had received a favorable ruling on the scope of cross-examination, and decided that he no longer wished to offer a plea bargain. The prosecutor withdrew the offer. The trial court held that it could not force the prosecution to keep its promise.

The California Court of Appeal affirmed. The court held that, although the parties had signed an agreement in which the defendant promised to plead guilty, and the prosecution promised to dismiss two of the counts charged (normally a binding bilateral contract), the court could not force either party to perform the agreement until the defendant either pleaded guilty or otherwise detrimentally relied on the promise because "unexecuted plea bargains are analogous to unilateral contracts." 75 Cal. App. 4th at 1354. "Although we do not believe that plea bargains in criminal cases can be governed by civil contract principles, we find these cases persuasive and adopt the majority view that a prosecutor *may* withdraw from a plea bargain before a defendant pleads guilty or otherwise detrimentally relies on that bargain." *Id*. at 1353-54 (emphasis added).[12]

What the rule in *Rhoden* must mean is that the prosecutor can withdraw an offer before the defendant pleads guilty or otherwise detrimentally relies on the offer *if* the defendant is adequately represented by counsel. What so limits the language in *Rhoden*? The Sixth Amendment to the United States Constitution as interpreted in *Blaylock* and *Nunes*.

The right of a prosecutor to withdraw an offer, as recognized by *Rhoden*, is a right created by a court under state law. It is, therefore, subordinate to the criminal defendant's right to effective assistance of counsel given to him by the United

---

[12]That the prosecutor *could* have withdrawn the offer, however, is not proof she *would* have. As demonstrated above, there simply is no proof here the prosecutor would have withdrawn the offer because of Riggs' vulnerability to a three strikes enhancement.

States Constitution. If there is any direct conflict between the state rule and the rights guaranteed by the federal Constitution, the latter must prevail. "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2; *see also McCulloch v. Maryland*, 17 U.S. 316, 426 (1819).

Accordingly, even though Nunes was a California state prisoner, and therefore *People v. Rhoden* applied just as much to his case as to this case, the prosecutor was not totally free to withdraw the offer after our remand. Otherwise, our orders in *Blaylock* and *Nunes* would have been useless and a nonsense. For instance, our remand order was to release Nunes unless the plea offer was reinstated. Our order did *not* allow the plea offer to be withdrawn and for the case to proceed to trial. If the offer were not reinstated, Nunes went free, not to trial. *Nunes*, 350 F.3d at 1049.

Our remand in *Blaylock* also implied that, depending on the outcome of the evidentiary hearing, Blaylock would be entitled to have the original offer reinstated, so he could accept the offer and proceed to the agreed sentencing rather than to trial. *Blaylock*, 20 F.3d at 1468-69.

Even if the prosecutor *could* have withdrawn her five-year offer before Riggs pleaded guilty, the district court here has necessarily found the prosecutor would *not* have so withdrawn the offer. This follows from the district court's finding that Riggs met *Strickland's* requirement that he prove that "but for counsel's unprofessional errors, the result would have been different." *Riggs*, 178 F. Supp. 2d at 1149-51; *see also Strickland v. Washington*, 466 U.S. 668, 694 (1993). This finding also was not appealed by the state. Necessarily implicit in the district court's finding that with competent

counsel "the result would have been different" is the factual finding the state would *not* have withdrawn its offer. After all, if we are to assume, as does the majority, the state would have withdrawn its offer, then Riggs would have suffered no prejudice from his counsel's errors and the district court would not have found Riggs satisfied the necessary second prong for *Strickland* error.

## III

Having found that the habeas corpus writ should be granted, Riggs is entitled to be put back in the position he would have been in had his counsel been effective. *Nunes*, 350 F.3d at 1057 ("if the state puts him in the same position he would have been in had he received effective counsel, that would cure the constitutional error"). The district court did not have discretion to fashion a remedy that does not cure the undisputed constitutional error that occurred here.

Because Riggs has already served two years longer than he would have under the five-year plea offer, we should enter an order that Riggs has served his time and he should remain a free man. Accordingly, I respectfully dissent.